VOLE, INC., Plaintiff-Appellee, v. JOHN GEORGACOPOULOS, Indiv. and d/b/a Frankfurter Express, *et al.*, Defendants-Appellants.

Second District No. 2—88—0534

Opinion filed May 1, 1989.

Timothy J. Murphy, of Meersman, Meersman & Murphy, of Mount Prospect, for appellants.

Ori, Tepper, Fox & Maley, of Waukegan, for appellee.

JUSTICE LINDBERG delivered the opinion of the court:

Defendants appeal from the judgment of the circuit court of Lake County finding defendants in breach of a commercial lease with plaintiff, Vole, Inc., and ordering a forfeiture of the lease and repossession by plaintiff. Defendants' counsel has failed to comply with Supreme Court Rule 341(e)(4)(ii), which requires a jurisdictional statement indicating a proper basis for appellate jurisdiction. (122 Ill. 2d R. 341(e)(4)(ii).) We expect compliance with this rule in future appeals to this court.

Plaintiff is the owner of a parcel of land located at 23250 N. Milwaukee Avenue, Half Day, Lake County, Illinois. On July 15, 1972, plaintiff entered into a written lease for the parcel with the lessees, Arthur and Silvio DiVito. The lease agreement called for the construction of a building on the parcel by the lessees. The term of the lease was 24 years. The amount of rent was set at $450 a month for two years, $500 per month for the next three years and $600 per month for the balance of the term. All construction costs were to be paid by the lessees. A building was constructed, and the lessees commenced operation of a hot dog stand known as Art's Beef.

In September 1980, the lease was assigned, with the required consent of plaintiff, to defendant Thomas G. McGrogan. Defendant McGrogan continued the operation of Art's Beef. In January 1982, defendant McGrogan contracted by sublease with the original lessee DiVito to operate the business for defendant. DiVito operated the business until December 31, 1982. Rent was paid by DiVito to McGrogan and then McGrogan paid plaintiff. In January 1983, a sublease was entered into between McGrogan and Vernel Reddig for a period of one year.

On December 27, 1983, defendants John Georgacopolous and McGrogan entered into a sublease. Georgacopolous was the owner of Fiddlesticks Saloon and Dining Room (Fiddlesticks), a restaurant located on property adjacent to the premises of plaintiff being leased to defendant McGrogan.

In March 1984, defendant McGrogan sent a letter notifying plaintiff of his intention to erect a new sign on the leased property. He received no response. The sign was erected and advertised both the hot dog stand, now called Frankfurter Express, and Fiddlesticks, the restaurant next door. The part of the sign advertising Fiddlesticks was illuminated and twice the size of the part of the sign advertising Frankfurter Express. The part of the sign advertising Frankfurter Express was not illuminated. The sign also advertised the fact that Fiddlesticks served alcoholic beverages.

McGrogan acknowledged receipt of at least two letters notifying him of plaintiff's objections to the sign. The first of these letters was received in October 1984. Defendant McGrogan also testified to having received actual notice that plaintiff objected to the use of the leased premises for the parking of cars belonging to patrons of Fiddlesticks and that defendant McGrogan received such notice prior to ever subletting the premises to defendant Georgacopolous in January 1983.

On August 16, 1985, a two-count complaint was filed in the circuit court of Lake County against defendants regarding the use of plaintiff's property located at 23250 N. Milwaukee Avenue, Half Day, Lake County, Illinois. Count I alleged, *inter alia*, that defendant Georgacopoulos, the corporate president of Lincolnshire Inn, Inc., an Illinois corporation, operating the Fiddlesticks Saloon and Dining Room at the premises immediately adjacent to and bordering the westerly edge of the leased premises, had joined the two businesses' parking lots; used the parking facilities of the leased premises in connection with the operation of Fiddlesticks, wherein alcoholic beverages were sold; erected a sign upon the leased premises advertising Fiddlesticks, without the consent of plaintiff; used the leased premises' parking lot for eight hours per day solely for the use of the patrons of Fiddlesticks; and used and maintained the sign only to advertise Fiddlesticks. Count II adopted and realleged the foregoing and additionally alleged an unauthorized assignment of the lease and sought a right to reenter and repossess the leased premises.

At the hearing for a preliminary injunction on November 20, 1985, the court entered an order which required defendants to reinstall cement bumpers which effectively divide the parking lots, prohibited the valet parking attendants of Fiddlesticks from parking vehicles on the leased premises, prohibited the sign from advertising or promoting the sale of alcoholic beverages at Fiddlesticks, and prohibited Fiddlesticks' employees from advising their patrons or prospective patrons to park on the leased premises. Pursuant to a petition for rule to show cause and other relief filed April 7, 1986, the court on April 23, 1986, found that the defendants, Georgacopoulos and McGrogan, willfully failed and refused to install cement bumpers effectively dividing the parking lots, that they advertised and promoted the sale of alcoholic beverages on the sign, and that valet parking attendants from Fiddlesticks parked vehicles on the leased premises; and held defendants in contempt of court. The court again directed compliance with its order and imposed fines. Pursuant to a further petition, the court on December 9, 1986, ordered that the cement

bumpers be secured to preclude their being moved.

On February 17, 1988, an agreed order was entered which granted a permanent injunction in favor of plaintiff as requested in count I. The order also provided, "That this cause is set for trial on April 18, 1988, at 10:30 a.m. on the issue of attorneys' fees and Count II of the complaint." The case proceeded to trial resulting in the trial court's order of April 26, 1988, and in a judgment order dated May 2, 1988.

In its decision, the trial court initially found that the defendants breached the lease in two pertinent ways: (1) by causing an alteration to the premises, other than the building, by removal of the outdoor sign and replacing it with a substantially larger sign which advertised, for all practical purposes, the adjacent restaurant; and (2) by changing the primary use of the premises to a parking lot for the adjacent restaurant by removing cement bumpers between the lots, by reducing business hours for the leased premises and by the posting of new signs with restrictions upon parking in any other adjacent lots but not posting such signs on the leased premises. Not only did the trial court find that the evidence was contrary to McGrogan's sworn allegations in his answer, but in the judgment the court inserted the finding that the testimony of Georgacopoulos and McGrogan was not credible in pertinent part.

The court went on to find that since defendant McGrogan admitted actual receipt of written notice of the lease violations from a representative of plaintiff, plaintiff's failure to send such notice by registered mail did not render such notice invalid although the contract provided for notice by registered mail. The trial court entered a judgment granting plaintiff the immediate right to repossess the premises and awarding plaintiff attorney fees as provided for in the lease agreement.

On appeal, defendants contend that: (1) the trial court erred in granting relief under count II based on the same factual allegations which were the basis of count I, where count I was disposed of by the trial court's entry of a permanent injunction as agreed to by the parties; (2) the trial court erred in ruling that plaintiff's failure to send defendant McGrogan a written notice by registered mail of alleged breaches of the lease did not result in defective notice; (3) plaintiff waived its right to forfeiture under the lease; (4) the trial court's construction and interpretation of the lease was against the manifest weight of the evidence; and (5) the trial court erred in awarding plaintiff certain attorney fees.

Defendants argue that the trial court erred when it considered the

same breaches of the lease alleged in count I as a basis for granting a forfeiture of the lease as requested in count II of plaintiff's complaint. Defendants contend that the trial court's order granting a permanent injunction as requested by count I, entered by agreement of the parties, operated as a compromise and settlement and merged all causes of action or claims of plaintiff with regard to the allegations of fact in count I.

■ Generally, a valid settlement agreement operates as a bar to all included and prior causes of action. (*Keim v. Kalbfleisch* (1978), 57 Ill. App. 3d 621, 373 N.E.2d 565.) A settlement agreement is conclusive on the parties as to matters fairly considered and intended to be included within its terms. (*Madison Associates v. Bass* (1987), 158 Ill. App. 3d 526, 511 N.E.2d 690.) The ordinary rules of contract construction apply to the interpretation of settlement agreements. *In re Marriage of Marquardt* (1982), 110 Ill. App. 3d 271, 442 N.E.2d 267.

■ In the instant case, defendants rely on the trial court's order of a permanent injunction on count I as the written settlement agreement between the parties. This same order sets a date for the trial on count II. Count II contains, in addition to other allegations of breach, reallegation of the same facts as alleged in count I. If the parties intended to preclude consideration by the trial court in the hearing of count II, the breaches enjoined by the trial court's permanent injunction entered under count I, the order could have easily stated such an intention. We agree with the trial court that no such intention is expressed in the permanent injunction order. The trial court did not err in its interpretation of the injunctive order.

■ Defendant also argues that principles of *res judicata* preclude the trial court from relying on the allegations of fact contained in count I as a basis for granting additional relief under count II. A final judgment on the merits by a court of competent jurisdiction is conclusive on the rights of the parties and their privies, and as to them constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action. (*Rotogravure Service, Inc. v. R.W. Borrowdale Co.* (1979), 77 Ill. App. 3d 518, 395 N.E.2d 1143.) *Res judicata* should only be applied where fairness and justice require and only to facts and conditions as they existed when judgment was entered. (*Rotogravure Service, Inc. v. R.W. Borrowdale Co.* (1979), 77 Ill. App. 3d 518, 395 N.E.2d 1143.) Before a judgment can bar a subsequent action, it must be a final judgment on the merits. *Rotogravure Service, Inc. v. R.W. Borrowdale Co.* (1979), 77 Ill. App. 3d 518, 395 N.E.2d 1143.

■ The trial court's order granting a permanent injunction as re-

quested in count I of plaintiff's complaint, although a final order on the injunctive issue, was not an appealable order. *(Smith v. Goldstick* (1982), 110 Ill. App. 3d 431, 442 N.E.2d 551 (permanent injunction entered by trial court, prior to entry of final judgments as to all claims and parties before court, is not appealable under Supreme Court Rule 307(a)(1), but is appealable as a final judgment to fewer than all parties or claims if the required finding of appealability under Supreme Court Rule 304(a) is entered by trial court); *Statistical Tabulating Corp. v. Hauck* (1972), 5 Ill. App. 3d 50, 282 N.E.2d 524; 107 Ill. 2d R. 304(a).) Since the trial court's order was not yet appealable without the specific finding required under Supreme Court Rule 304(a), the trial court retained jurisdiction, and the order was subject to revision at anytime prior to entry of a judgment adjudicating all the claims, rights and liabilities of all the parties. *(Wilson-Jump Co. v. McCarthy-Hundrieser & Associates, Inc.* (1980), 85 Ill. App. 3d 179, 405 N.E.2d 1322.) Such orders are interlocutory in nature. *(Catlett v. Novak* (1987), 116 Ill. 2d 63, 506 N.E.2d 586; *Wilson-Jump Co. v. McCarthy-Hundrieser & Associates, Inc.* (1980), 85 Ill. App. 3d 179, 405 N.E.2d 1322.) Orders which are interlocutory in nature are not considered final judgments on the merits for purposes of applying *res judicata.* *(Catlett v. Novak* (1987), 116 Ill. 2d 63, 506 N.E.2d 582.) The trial court's order granting a permanent injunction was in the nature of an interlocutory order and not a final judgment on the merits for purposes of applying *res judicata.* (See *Hassett Storage Warehouse, Inc. v. Board of Election Commissioners* (1979), 69 Ill. App. 3d 972, 387 N.E.2d 785 (dismissal of complaint in chancery with leave to amend and refile at law was in nature of interlocutory order and although second action was based on the same facts and involved the same parties, estoppel by judgment was inapplicable where the order was not intended to finally terminate litigation between the parties).) The trial court did not err in refusing to apply principles of *res judicata* to bar relief under count II of plaintiff's complaint.

Defendants next contend that the trial court erred in ruling that actual receipt of written notice by defendant McGrogan was sufficient notice of default to allow plaintiff to reenter and repossess the leased premises as provided for in the lease. Paragraph No. 4 of the lease provided:

> "4. *Default*—In the event that Lessee, within 10 days after receipt from Lessor of notice of any default by Lessee, shall fail to commence correcting such default with reasonable diligence, then Lessor shall have the right immediately to terminate this Lease and shall have the immediate right of re-entry

and repossession of all the premises and all buildings, fixtures, and improvements located thereon, without any obligation to compensate Lessee in any manner therefor, and all of such buildings, fixtures, and improvements shall thereupon become the property of Lessor and Lessee shall have no further right, title, or interest therein. Lessee, however, shall only have ten days after written notice from Lessor to correct any default in the payment of rent."

Paragraph No. 6 provided:

"6. *Notices*—Whenever it shall be necessary for either party to serve notice on the other respecting this Lease, such notice shall be served by registered mail addressed to Lessee at 502 Etowah Drive, Prospect Heights, Illinois, or Lessor at P. O. Box 96, Prairie View, Illinois, unless and until different addresses may be furnished in writing by either party to the other."

Defendant McGrogan admitted receiving written notice from plaintiff that the sign as well as the parking of Fiddlesticks' patrons on the leased premises were considered violations of the lease. These notices were not sent by registered mail.

In general, the object of notice is to inform the party notified, and if the information is obtained in any way other than formal notice, the object of notice is attained. (*Owens v. Second Baptist Church* (1987), 163 Ill. App. 3d 442, 516 N.E.2d 712.) Defendants do not argue that the content or substance of the notice was somehow insufficient to declare a default under the lease, nor could we review such a contention where the letters sent to defendant McGrogan by representatives of plaintiff, although introduced at trial, are not contained in the record on appeal. Defendants' only contention is that plaintiff's failure to send the written notice by registered mail as required by the lease agreement defeats any right of plaintiff to enforce the provision concerning a default by defendants. A provision requiring sending of notice by registered mail is merely intended to insure delivery. (*Goldberg v. Brzezicki* (1952), 348 Ill. App. 391, 108 N.E.2d 816 (abstract of opinion).) Although forfeitures are not favored, courts will enforce forfeiture provisions where the right is clearly shown and injustice will not result. (*Dahm, Inc. v. Jarnagin* (1985), 133 Ill. App. 3d 14, 478 N.E.2d 641.) We find no injustice or prejudice to have resulted by the trial court ruling that defendants received sufficient notice of default, where defendant McGrogan admitted actual receipt of written notice, although such notice was not sent by registered mail as required by the lease agreement.

Defendants also contend that plaintiff waived any right to seek a forfeiture of the lease due to plaintiff's acceptance of rent. Defendants have waived this issue for the purpose of appeal because the issue was never raised in the trial court. *Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 475 N.E.2d 872.

Defendants' next contention on appeal is that the trial court erred in its consideration of certain evidence in construing the lease and that the trial court's interpretation of the lease, which led to its finding that defendants breached the lease, was against the manifest weight of the evidence. The trial court found in pertinent part that the construction of a sign, substantially larger than the sign removed, which for all practical purposes advertised the adjacent establishment of Fiddlesticks, was not allowed under the lease terms. Additionally, the court found that the leased premises had been effectively used as a parking lot for the adjacent restaurant, Fiddlesticks, and that such use was a use not intended by the parties of the lease agreement.

■ A contract should be construed as a whole to give effect to the intention of the parties, and great weight should be given to the principal apparent purpose and intention of the parties at the time of contracting. (*De Witt County Public Building Comm'n v. County of De Witt* (1984), 128 Ill. App. 3d 11, 469 N.E.2d 689.) Whereas in the instant case, the construction to be placed on an agreement is dependent not only upon the meaning of the words employed, but also upon extrinsic facts and circumstances, and upon the construction which the parties themselves have placed upon the agreement, and as these facts are controverted, any inferences to be drawn are for the trier of fact. (*Sherbrooke Homes, Ltd. v. Krawczyk* (1980), 82 Ill. App. 3d 990, 403 N.E.2d 622.) A reviewing court will not reverse a trial court's findings of fact unless such findings are against the manifest weight of the evidence. *Delasky v. Village of Hinsdale* (1982), 109 Ill. App. 3d 976, 441 N.E.2d 367.

The contract was not silent as to alterations, repairs and improvements of the building and real estate. The contract provided in relevant part:

"This is to be a net lease wherein Lessee pays for all *maintenance, repairs and replacements required on said building or real estate* ***.

Lessee shall have the right from time to time to make *alterations and improvements within said building* but not to impair the value of the building. The leased premises shall not be used for the sale of alcoholic beverages." (Emphasis added.)

Defendants argued that the lease made them responsible for mainte-

nance, repairs and replacements to the real estate (*i.e.*, parking lot), and, therefore, they could replace the sign which was damaged. Plaintiff argued that the new sign was larger, advertised the adjacent restaurant and alcohol sales and was not authorized under the lease. Plaintiff argued that the lease only authorized alterations and improvements "within said building" not "on said building or real estate" as used in the preceding paragraph concerning maintenance, repairs and replacements. The trial court agreed with plaintiff's interpretation, relying in part on the fact that defendant McGrogan sent a letter to plaintiff, prior to erecting the sign, seeking the consent of plaintiff to the erection of the sign. Defendant argues such reliance by the court was error. We do not agree.

■■■ When a contract is ambiguous or silent on a disputed issue, a court may, in order to determine the intent of the parties at the time of contracting, consider the contemporaneous or subsequent acts of the parties to the contract. (*In re Marriage of Whetstone* (1980), 87 Ill. App. 3d 164, 409 N.E.2d 41.) The fact defendant McGrogan sent a letter to plaintiff requesting its consent is evidence that the sign constructed was not within the intent of the parties when the lease was entered and violated the lease. Further, defendant McGrogan testified to his interpretation of the lease that the lease did not give the lessee permission to make any alterations or improvements with regard to signs or structures outside the main building. The trial court's interpretation of the lease to preclude the erection of a sign, larger than the previous sign, which advertised for all practical purposes the adjacent restaurant Fiddlesticks as well as the sale of alcohol at Fiddlesticks was not against the manifest weight of the evidence.

■■ Defendants also argue that since the lease is silent as to the use of the premises as a parking lot for the adjacent restaurant, the lease should be construed in favor of the lessee to allow any lawful use not materially different from that which the premises are adapted to or for which they were constructed. (See 24 Ill. L. & Prac. *Landlord & Tenant* §299 (1980) (relied upon by defendants).) The occasional parking of cars by patrons of Fiddlesticks in the lot of the Frankfurter Express may not be a material breach of the lease agreement, and such an allegation was contained in defendants' answer to plaintiff's complaint. However, the trial court did not make such a finding. When the lease began in 1972, the premises were used as a hot dog stand and parking for that stand. The premises were used in that manner until defendant McGrogan sublet the premises to defendant Georgacopolous, the owner of Fiddlesticks. Georgacopolous continued to run the hot dog stand but at reduced hours and used the

parking lot of the leased premises for parking cars of Fiddlesticks' patrons. The trial court found that, contrary to defendants' testimony, the use of the leased premises for parking of Fiddlesticks' patrons was not an occasional or neighborly accommodation as alleged by defendants in their response to plaintiff's complaint. The trial court found during the proceedings on this action that: the valet parking attendants of Fiddlesticks parked cars on the leased premises, as well as informed patrons to park on the leased premises; signs were posted on other adjacent lots informing patrons of Fiddlesticks not to park in such lots but no such signs were posted on the leased premises; the hours of operation of the leased premises were reduced drastically; and the barriers separating the leased premises from the adjacent property were removed, further encouraging the use of the premises as a parking lot for Fiddlesticks' patrons. The trial court's interpretation of the lease to not allow such a change in use, so materially different from the use contemplated by the parties when contracting, was not against the manifest weight of the evidence. *Silas v. Robinson* (1985), 131 Ill. App. 3d 1058, 477 N.E.2d 4 (in a bench trial, where testimony is conflicting and contradictory, it is the province of the trial court to determine the credibility and weight to be afforded the testimony, and such determinations will not be reversed unless against the manifest weight of the evidence).

██ Defendants also contend that the trial court erred in the amount of attorney fees awarded to plaintiff. Defendants cite no authority for their argument as required by Supreme Court Rule 341(e)(7) (107 Ill. 2d R. 341(e)(7)) and have waived the issue for the purpose of appeal. *In re Marriage of Anderson* (1985), 130 Ill. App. 3d 684, 474 N.E.2d 911.

The judgment of the circuit court is affirmed.

Affirmed.

McLAREN and DUNN, JJ., concur.