628 N.E.2d 194 (1993)
256 Ill. App.3d 469
194 Ill.Dec. 697
BANK OF RAVENSWOOD, Plaintiff,
v.
Julius POLAN, Defendant, Third-Party Plaintiff/Appellant (Yitzhak Persky, Barry E. Morgen, R. Lawrence Carson, Park Sheridan Associates, Ltd., and Michael L. Pritzker, Third-Party Defendants/Appellees).
No. 1-91-3916.
Appellate Court of Illinois, First District, Fourth Division.
November 4, 1993.
Rehearing Denied December 7, 1993.
*195 Leonard A. Nelson and Robert C. Goldberg of Schoenberg, Fisher & Newman, Ltd., Chicago, for third-party appellant.
Norman Hanfling of Norman Hanfling & Associates, and Jerome D. Citron, Chicago, for third-party appellees.
Presiding Justice CAHILL delivered the opinion of the court:
This is an appeal from a grant of summary judgment and numerous other orders which denied Julius Polan indemnification for a judgment he paid to the Bank of Ravenswood on two defaulted notes. In his third-party complaint, Polan sought to establish that because of an indemnification agreement signed in 1978, the third-party defendants Barry Morgen, Yitzhak Persky, and R. Lawrence *196 Carson owed him the amount he paid to the bank. Before trial, the court granted summary judgment against Polan on the indemnity agreement. At trial on other theories, the court granted directed verdicts against Polan. We reverse and remand.
The issue here is this: Does an agreement to indemnify for any loss incurred as a guarantor extend to a judgment satisfied on a defaulted note signed both as guarantor and co-maker?
The facts are these: Julius Polan, Yitzhak Persky, Barry E. Morgen, and R. Lawrence Carson agreed in 1978 to purchase an apartment building on Sheridan Road in Chicago, refurbish it, and convert the units to condominiums. Persky, Carson, and Morgen formed Park Sheridan Associates, Ltd. ("PSA") under the Uniform Limited Partnership Act. (Ill.Rev.Stat. 1977, ch. 106½, par. 44, et seq.) Polan does not appear of record as a member of the partnership in any documents filed under the Act. In a separate oral agreement, Persky and Polan agreed that Polan would invest $50,000 in the partnership, and in return receive 50% of any profits payable to Persky.
PSA sought a loan from the Bank of Ravenswood to finance the venture, but the bank declined. The parties in PSA approached Polan and asked him to guarantee a loan from the bank. Polan agreed, and with his involvement, the bank agreed to proceed. The parties executed a group of loan documents. The three partners of record in PSA signed a number of loan documents as makers, and each signed an unlimited personal guarantee. Polan signed the first installment note as a maker, the other notes as a guarantor, and also signed an unlimited personal guarantee.
The three partners in PSA and Polan concurrently entered into a separate agreement the relevant portions of which follow:

"AGREEMENT TO INDEMNIFY GUARANTOR
AGREEMENT made this 18th day of October, 1978 by and between JULIUS POLAN and YITZHAK PERSKY, R. LAWRENCE CARSON, BARRY E. MORGEN, hereinafter referred to as PERSKY, ET AL.
WHEREAS, PERSKY, ET AL is the general partner in the PARK SHERIDAN ASSOCIATION, LTD., an Illinois Limited Partnership, and POLAN is a limited partner in said PARTNERSHIP;
AND WHEREAS, neither the Partnership nor PERSKY, ET AL, individually were unable to borrow capital without a personal loan guaranty from POLAN;
AND WHEREAS, POLAN has agreed to personally guarantee a business loan in the amount of FIVE HUNDRED EIGHTY ONE THOUSAND AND NO/ 100 ($581,000.00) DOLLARS from the Bank of Ravenswood, Chicago, Illinois to the Partnership.
AND WHEREAS, PERSKY, CARSON and MORGEN have agreed to indemnify and hold POLAN harmless against any losses suffered by POLAN on account of his guarantee;
IT IS AGREED BY THE PARTIES:
1. POLAN shall sign the loan from the Bank of Ravenswood as one of four (4) personal Guarantors (along with PERSKY, R. LAWRENCE CARSON and BARRY E. MORGEN).
2. PERSKY, ET AL hereby agrees to indemnify and save POLAN harmless from any loss, costs, damages, expenses (including reasonable attorney fees) suffered or incurred by reason of his becoming such Guarantor. * * *"
In June of 1981, two renewal notes were signed at the bank, one for approximately $26,000, and one for approximately $455,000. Both notes are stamped with PSA as maker. The smaller note was also signed by Persky, Carson, and Polan as makers on the front and guarantors on the back. The larger note contained only Persky and Polan's signatures as makers on the front and guarantors on the back.
Late in 1982, faced with a difficult condominium market, PSA was unable to meet its repayment obligations to the bank. The bank foreclosed, auctioned off the unsold *197 units, applied the proceeds to the outstanding loan, and then sued only Polan for the deficiency. Polan joined Persky, Carson, and Morgen as third party defendants alleging they were liable to him under the indemnity agreement for any judgment the bank obtained against him. The bank moved for summary judgment against Polan, and the court entered judgment "in favor of Bank of Ravenswood and against defendant Julius Polan, based upon the notes attached as exhibits to the Complaint* * *". (Emphasis added.) The two renewal notes of June 1981 had been attached to the complaint.
Polan satisfied the judgment and moved for summary judgment against the third party defendants. Persky confessed judgment, and is not a party to this appeal. Carson denied any liability, but eventually Polan and Carson compromised Polan's claim on the $26,000 note which Carson signed in June of 1981. Morgen, who did not sign either of the June 1981 renewal notes, denied any liability.
On cross motions for summary judgment the court ruled that neither Carson nor Morgen were liable to Polan under the indemnity agreement. The judge based his ruling on the judgment order in the bank's case against Polan, which was "based upon the notes attached as exhibits to the complaint in that action and not on the guarantee of those notes * * *."
Polan continued to press his action against Carson and Morgen on theories that did not rely directly on the indemnity agreement and which are not relevant to this appeal. The trial court granted a motion in limine barring introduction of Carson and Morgen's personal guarantees to the bank, as well as the indemnity agreement. After the close of Polan's case, the court directed a verdict for Carson and Morgen on all but one of the remaining counts. Polan and Carson compromised the claim contained in the last trial count. Polan filed this appeal.
Carson and Morgen contend that under the indemnity agreement they only agreed to reimburse Polan for a loss he might incur as a guarantor on loans to Park Sheridan. Since the judgment against Polan was "on the notes", they argue he never incurred loss as a guarantor. Polan contends that the wording of the bank's judgment against him is irrelevant to the indemnity agreement between him and the PSA partners. We agree.
Although summary judgment is to be encouraged, it should only be granted when the right of the moving party is clear and free from doubt. (Purtill v. Hess (1986), 111 Ill.2d 229, 95 Ill.Dec. 305, 489 N.E.2d 867.) The entry of summary judgment has two requirements: the absence of any issue of material fact and the unmistakable conclusion of law that the moving party is entitled to the judgment he seeks. Ill.Rev.Stat. 1991, ch. 110, par. 2-1005(c), now codified as 735 ILCS 5/2-1005(c) (West 1992); Skipper Marine Electronics, Inc. v. United Parcel Service, Inc. (1991), 210 Ill.App.3d 231, 155 Ill. Dec. 55, 569 N.E.2d 55.
In granting summary judgment against Polan, the motion judge found as a matter of law that Polan had no recourse to the indemnity agreement because the bank's judgment against Polan was "on the notes", and, by implication, not on the guarantee. We find no basis in law to permit the judgment order in the bank's case against Polan to control the outcome of Polan's third party complaint on the indemnity agreement. The renewal notes contain Polan's signature on the front as a maker and on the back as a guarantor, and the judgment wording indicates only that it was "based upon the notes attached."
Where the trial court has determined the construction of a contract as a matter of law, the standard on review is de novo and we construe the contract unrestrained by the trial court's judgment. Zale Construction Co. v. Hoffman (1986), 145 Ill.App.3d 235, 98 Ill.Dec. 708, 494 N.E.2d 830; Superior Investment and Development Corp. v. Devine (1993), 244 Ill.App.3d 759, 185 Ill.Dec. 168, 614 N.E.2d 302.
The purpose in construing a contract is to give effect to the intent of the parties at the time the contract was made. (Boesl v. Suburban Trust & Savings Bank (N.D.Ill. 1986), 642 F.Supp. 1503; ETA Trust v. Recht (1991), 214 Ill.App.3d 827, 158 Ill. Dec. 210, 574 N.E.2d 4.) Whether or not a contract is ambiguous is a question of law. *198 (Old Republic Ins. Co. v. Federal Crop Ins. Corp. (7th Cir. 1991), 947 F.2d 269; Newcastle Properties, Inc. v. Shalowitz (1991), 221 Ill.App.3d 716, 164 Ill.Dec. 221, 582 N.E.2d 1165.) A contract is ambiguous if its language is capable of being understood in more than one sense. Farm Credit Bank v. Whitlock (1991), 144 Ill.2d 440, 163 Ill.Dec. 510, 581 N.E.2d 664.
Here, the indemnity agreement between Polan and the PSA arguably contains an ambiguity. Although the document states Polan is to be indemnified as a guarantor, the document is silent on whether or not the parties intended a different result if Polan also became a co-maker. It is a settled rule of evidence that where a note is executed by more than one party, one of the parties may establish the existence of an extrinsic agreement that as between the parties, he was meant to be a surety or guarantor only. (Wigmore on Evidence, Vol IX, § 2438(1); see Kratovil v. Thieda (1966), 36 Ill.2d 247, 222 N.E.2d 485.) Whatever his role from the bank's point of view, Polan has the right to offer evidence to show that his role from the point of view of the PSA partners was that of a guarantor. See also Ill.Rev.Stat. 1991, ch. 26, par. 3-419, now codified as 810 ILCS 5/3-419 (West 1992); South Side Bank & Trust Co. v. Yorke (1973), 15 Ill.App.3d 948, 305 N.E.2d 367; Marcus v. Wilson (1973), 16 Ill.App.3d 724, 306 N.E.2d 554; Jeffrey v. Bond (Tex.Civ.App.1973), 498 S.W.2d 31, rev'd on other grounds (Tex.1974), 509 S.W.2d 563.
Extrinsic evidence may be introduced to show the intent of the parties and resolve an ambiguity in a contract. (Pioneer Trust and Savings Bank v. Lucky Stores, Inc. (1980), 91 Ill.App.3d 573, 47 Ill.Dec. 36, 414 N.E.2d 1152.) If the intent of the parties can be determined from facts not in dispute, then the meaning of the contract can be determined by the court as a matter of law. (Nerone v. Boehler (1976), 34 Ill.App.3d 888, 340 N.E.2d 534.) But if the ambiguity can only be resolved by resort to facts in dispute, then the contract must be construed by the trier of fact. Nerone, 34 Ill.App.3d at 891, 340 N.E.2d 534; Vole, Inc. v. Georgacopoulos (1989), 181 Ill.App.3d 1012, 131 Ill. Dec. 17, 538 N.E.2d 205.
Upon a review of the record, we cannot determine the intent of the parties from facts not in dispute. In Polan's favor, it appears that he only stepped forward to sign the loan documents because the bank would not agree to lend money to PSA without an independent guarantor. Further, Polan's name was not included on any partnership papers filed with the State, and it appears he stood to benefit from the transaction only because of his separate oral agreement with Persky. Last, Polan never received any of the money from the loans, nor did he participate in expenditure decisions on the project.
Defendants contend, however, that when Polan signed the renewal notes as a comaker, his role in the project changed to one not contemplated when the indemnity agreement was signed. Because the project appeared to be failing, Morgen attempted to formally withdraw from the partnership, and Carson agreed to sign only the smaller renewal note. Polan signed both renewal notes as a maker and a guarantor. As far as we can discern from the record, this was the first time he signed any document as a maker since signing the first installment note. Defendants contend that upon doing so, Polan stood to benefit from the project beyond his original agreement with Persky and that he therefore stepped beyond his role as guarantor to become a principal carrying a full risk of loss.
Whether or not Polan in fact "took over" the project, and whether the parties intended Polan to be indemnified if he did take over, are questions which cannot be answered from the undisputed facts of record. These questions are therefore for the trier of fact.
We reverse the following orders of the trial court: the order dated March 25, 1986, granting summary judgment for Carson and Morgen; the order dated May 19, 1987, striking count I of the amended complaint; the order dated November 4, 1987, granting summary judgment against Polan on count II of the second amended third party complaint; the order dated November 12, 1991, granting a motion in limine barring the introduction of Carson's and Morgen's unlimited personal *199 guarantees and the indemnity agreement of October 18, 1978; and the orders dated November 15, 1991, granting directed verdicts against Polan on counts III, IV, and V of the second amended third party complaint. We remand for further proceedings consistent with this opinion.
Reversed and remanded.
JOHNSON and HOFFMAN, JJ., concur.