NOTICE

Decision filed 03/29/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 210104-U

NO. 5-21-0104

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| KELLY N. JONES, | ) | St. Clair County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| and | ) | No. 13-D-147 |
| | ) | |
| MICHAEL P. JONES, | ) | Honorable |
| | ) | Stacy L. Campbell, |
| Respondent-Appellant. | ) | Judge, presiding. |

JUSTICE VAUGHAN delivered the judgment of the court.
Presiding Justice Boie and Justice Moore concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court's order granting in part and denying in part respondent's motion to dismiss and striking paragraphs 3 through 6 from the parties' agreed order is affirmed in part, and vacated in part, where the petition for rule to show cause sufficiently stated a cause of action, the language in paragraphs 4 and 5 of the agreed order was void as being contrary to public policy but those paragraphs did not include essential terms of the contract.

¶ 2    Respondent, Michael P. Jones, appeals the trial court's order that (1) granted in part and denied in part respondent's motion to dismiss petitioner Kelly N. Jones's rule to show cause petition and (2) removed paragraphs 3 and 6, after finding paragraphs 4 and 5 void for public policy, from the parties' agreed order. For the following reasons, we affirm in part and vacate in part.

1

¶ 3                            I. BACKGROUND

¶ 4     Kelly and Michael were married on September 9, 2000. Three children were born of the marriage: B.J., born October 2, 2004, P.J., born October 27, 2006, and L.J., born June 29, 2009. On February 28, 2013, Kelly filed a petition for dissolution of marriage.

¶ 5     Following a two-day hearing, on March 20, 2015, the trial court issued a joint parenting order regarding the children. On the same date, the trial court also issued a 22-page judgment of dissolution addressing the disposition of the parties' assets and liabilities, child support, maintenance, and dissipation. Relevant to this appeal, the judgment found that Kelly was a part-time family physician earning $100,000 annually and Michael was an optical surgeon earning $1,580,883 annually. The judgment awarded $8500 a month in maintenance to Kelly for 8½ years beginning April 1, 2015. After reducing Michael's net income by the amount of maintenance, the trial court found that under the guidelines (32% for three children) Michael would have a child support obligation of $20,236.29 but reduced the amount to $18,000 a month. Kelly would pay for health insurance and put $500 a month into each child's section 529 account. The trial court awarded Kelly $65,806 for marital funds expended towards Michael's business venture, $131,160 as reimbursement for dissipation, and $534,614 as part of the property division for a total amount due of $731,580.

¶ 6     On April 14, 2015, Michael filed a motion for rehearing, retrial, or modification of the judgment, addressing Michael's net income and debt, the amounts for child support and maintenance, the trial court's finding of dissipation, and the division of assets. On May 20, 2015, the parties entered an agreed order that reduced Michael's obligation to Kelly from $731,580 to $682,580, addressed transportation for parenting time, and reserved the remaining issues raised in Michael's postjudgment motion for ruling by the trial court. The trial court issued an order on May

2

22, 2015, that increased the amount Kelly would pay into the section 529 accounts from $500 to $1000 per child, amended the language related to the section 529 accounts, and clarified that Kelly would be responsible for health insurance, all extracurricular activity expenses, and all school-related expenses, including tuition, in the event the minor children attended a private high school. Michael appealed and the decision was affirmed by this court on June 29, 2016. See *In re Marriage of Jones*, 2016 IL App (5th) 150212-U.

¶ 7 On December 19, 2017, Kelly filed a motion to enforce mediation, noting that "both parties have requested, in writing, changes to the Joint Parenting Order," which were unacceptable to the other party. The pleading alleged that Kelly sought to mediate the future choice of schools for the children and Michael sought to increase his parenting time.

¶ 8 On November 27, 2018, the parties entered an agreed parenting plan which increased Michael's parenting time, set forth the schools that the children would attend in the fall of 2020, and allowed Kelly to relocate to St. Louis, Missouri. The parties submitted the agreed parenting plan with an agreed order to the trial court. Paragraph 1 of the parties' agreed order incorporated the terms of the agreed parenting plan. Paragraph 2 allowed Kelly to relocate to St. Louis, Missouri, and paragraph 3 reduced Michael's child support obligation from $18,000 to $12,000 per month effective 30 days after the entry of the order. The remaining terms of the agreed order stated:

"4. The parties agree that no further reduction or increase in child support shall be requested by either party, with the exception of the emancipation of each child, Michael's loss of his employment or Michael suffering an accident or similar event resulting in the substantial reduction of his income. Upon emancipation of the oldest child, the parties agree that the child support shall be reduced to $8,000.00 per month. Upon emancipation of the second child, the parties agree the child

3

support shall be reduced to $4,000.00 per month. The child support herein shall be payable until the child reaches the age of 19 or graduates from high school whichever occurs first.

5. In the event that Michael chooses to seek a reduction in child support other than as indicated herein, then Michael agrees that he shall, upon the filing of such petition, pay to Kelly the difference between the original child support award ($18,000.00) and the agreed reduction contained herein, retro-active to each month of reduced support after the entry of this Order.

6. Kelly's requirement to contribute the sum of $1,000.00 per month to each of the children's 527 [*sic*] financial accounts is hereby reduced to $500.00 per month per account effective 30 days after the entry of this order.

7. Michael shall pay the sum of $500,000.00 to Kelly within 30 days of the entry of this Agreed Order. The parties acknowledge that said payment satisfies in full, including all accrued interest, Michael's obligations under the Supplemental Judgment of Dissolution of Marriage and Order on Post-Trial Motions with regard to the outstanding property issues.

8. All other terms of the prior Judgment of Dissolution of Marriage entered by this Court on March 20, 2015, as modified by the Agreed Order of May 20, 2015, and the Court's order of May 22, 2015, remain in full force and effect except where modified herein.

9. The Court having reviewed the terms of the agreement of the parties finds same to be fair, reasonable, not unconscionable and in the best interest of the minor children and hereby approves same."

4

¶ 9       The trial court approved the agreed order on November 27, 2018. Thereafter, the parties operated under the terms of the agreed order until May 6, 2020, when Michael filed an emergency petition to modify child support and maintenance. Michael's petition alleged that the COVID-19 pandemic "prevented Respondent from working in his normal professional capacity." As a result, Michael claimed a substantial change in circumstances occurred in his ability to pay child support and maintenance because his "sole source of employment income at this time was working at Quantum Vision Center in Swansea, Illinois." He stated he was a physician who performed elective surgeries, including LASIK and cataract surgery, and that as "a result of the various executive orders of the Governor of the State of Illinois and regulations of the Illinois Department of Public Health in response to the COVID-19 pandemic, businesses such as Quantum Vision Center have been unable to serve the public since March 13, 2020." Michael claimed that he "has been prohibited from performing elective surgery indefinitely and has been unable to be employed at his usual profession since March 13, 2020." He further stated that he was unsure when the restrictions would abate and speculated that "even if allowed to resume surgeries only a small fraction of the number previously performed will be allowed." He claimed he "was currently operating at a net monthly deficit of $4272.56" and requested a suspension or modification of his maintenance and child support obligations retroactive to April 2020 through whenever he was able to return to work.

¶ 10      On May 13, 2020, Kelly filed an answer to Michael's motion denying that a substantial change in circumstances occurred as to respondent's ability to pay child support and maintenance and further denying the allegations relating to Michael's alleged reduction in income. She also filed a petition for rule to show cause based on paragraphs 4 and 5 of the November 27, 2018, agreed order claiming that due to Michael's emergency petition to modify, he was now required

to pay her the sum of $6000 per month, for a total of $102,000 representing the period from December 2018 through May 2020.

¶ 11     On May 15, 2020, Michael filed a motion to dismiss Kelly's petition for rule to show cause claiming a portion of the provision in paragraph 4 and all of paragraph 5 of the parties' November 27, 2018, agreed order were void as a violation of Illinois public policy because it restricted Michael from exercising a statutory right or penalized him for exercising a statutory right. In the alternative, Michael argued that he was not in violation of the agreed order because his pleading was based on "an accident or similar event resulting in the substantial reduction of his income" which was a triggering event in the agreed order.

¶ 12     On July 15, 2020, Michael moved to dismiss his petition to modify child support and maintenance because he "no longer wishe[d] to proceed with the costly litigation of his support obligation."[1] The motion was verbally granted by the trial court at the June 20, 2020, hearing. The hearing was also used to argue Michael's motion to dismiss Kelly's petition for rule to show cause. At that time, Michael's counsel argued that portions of paragraph 4 and all of paragraph 5 in the agreed order should be found void as being against public policy and the remaining language should be left as written. Kelly's counsel argued that the terms in paragraphs 4 and 5 did not restrict Michael's ability to modify the order and merely contained "a requirement that he pay back the benefit he received if he chooses to modify." Alternatively, Kelly's counsel argued that if the terms in paragraphs 4 and 5 were found to be void, the court should "find that the agreement as a whole is void because this is an essential term that cannot be performed." In support, counsel claimed this would put the parties back where they were prior to entering the agreement and that Michael would then owe Kelly an additional $6000 a month in child support back to December 2018.

_____

[1]On appeal Michael's counsel claimed that he dismissed his petition because he was able to return to work.

6

Following argument, the trial court ordered the parties to further brief the issues. Michael's argument remained the same; however, while Kelly continued to argue that paragraphs 4 and 5 were not contrary to public policy, she now argued that if paragraphs 4 and 5 were found to be contrary to public policy, only paragraph 3 should be stricken from the agreed order.

¶ 13   On December 15, 2020, the trial court issued an order finding, with regard to Michael's motion to dismiss for failure to state a claim, that although Michael's petition to modify listed one of the criteria set forth in the agreed order, the court required "an evidentiary hearing to determine if in fact such a criteria existed." The order further found that the November 2018 agreed order "may, in fact, cause a party to hesitate to file a petition for modification, in this case child support, and that the clause violate[d] public policy." The trial court found that no further analysis regarding the penalty provision was necessary because it too violated public policy. Thereafter, the court noted that the only pleading on file at the time the agreed order was entered was Kelly's motion to enforce mediation and found that paragraphs 1 and 2 of the agreed order related back to the pending pleading. The court found that paragraphs 3 through 6 dealt with a modification of child support and was not supported by any pleading pending at the time of the agreed order. The trial court further found that because no pleading requesting a modification of child support was pending at the time of the issuance of the agreed order, paragraphs 3 and 6 were related to paragraphs 4 and 5 and "that the parties were not entitled to a modification of child support at the time of the entry of the Agreed Order as there was no justiciable question invoked by the filing of a petition to modify child support." The court found paragraphs 3 through 6 were void and the remainder of the agreed order should remain in force and effect. As such, the trial court's order denied Michael's motion to dismiss Kelly's petition for rule to show cause based on a failure to state a claim, granted Michael's alternative argument for dismissal related to paragraphs 4 and 5, struck paragraphs 3, 4,

7

5, and 6 from the agreed order, and left the remaining terms in effect. Based on the stricken paragraphs, the court found Michael's initial grounds for dismissal moot and dismissed Kelly's petition for rule to show cause.

¶ 14    On January 11, 2021, Michael filed a motion for reconsideration and modification arguing, *inter alia*, that paragraphs 3 and 6 of the agreed order should not have been found void. On February 8, 2021, Kelly filed a two-count petition for rule to show cause. Count I claimed that Michael failed and refused to pay $18,000 in child support beginning in January 2021 and requested the court determine the amount of child support arrearage owed and order Michael to issue payment on the sum at a date certain. Count II claimed that based on the trial court's December 15, 2020, order, which struck paragraphs 3, 4, 5, and 6 as void from the November 27, 2018, agreed order, that Michael was required to pay $18,000 in child support for the period from December 1, 2018, through December 2020, instead of the $12,000 that he paid, the total amount due remained unpaid, Michael's failure to comply with the March 20, 2015, order was willful and without legal justification, and requested, *inter alia*, an order requiring Michael "to pay the child support deficiency owed from December 2018 through and including December 2020 at the rate of $6,000.00 per month for a total of $150,000.00 by a date certain." At the hearing on Michael's reconsideration request, the trial court indicated that in addition to paragraph 3 and 6 not having an underlying pleading, the terms in paragraphs 3 and 6 were essential to paragraph 4 and 5. On March 22, 2021, the trial court denied Michael's reconsideration, stating it was a final and appealable order. Michael appealed on April 9, 2021.

¶ 15                                    II. ANALYSIS

¶ 16    On appeal, Michael contends that the trial court: (1) erred in denying his motion to dismiss by requiring an evidentiary hearing where the motion should have been decided based on facts

8

apparent from the face of the complaint and matters of which the trial court could have taken judicial notice; and (2) misapplied existing law to find paragraphs 3 and 6 of the November 2016 agreed order void.

¶ 17                            Michael's Motion to Dismiss

¶ 18    "A motion to dismiss under section 2-615(a) of the Code of Civil Procedure" (735 ILCS 5/2-615(a) (West 2020)) "challenges the legal sufficiency of a complaint by alleging defects on the face of the complaint." *Rehfield v. Diocese of Joliet*, 2021 IL 125656, ¶ 20. "[A] court must determine whether the facts alleged in the complaint, viewed in the light most favorable to the plaintiff and taking all well-pleaded facts as true, are sufficient to state a cause of action upon which relief may be granted." *Id.* We review *de novo* an order granting or denying a section 2-615 motion. *Wakulich v. Mraz*, 203 Ill. 2d 223, 228 (2003).

¶ 19    Michael contends that the trial court erred in finding that an evidentiary hearing was required to determine Michael's motion to dismiss. In support, Michael claims that in ruling on a section 2-615 motion, the trial court may only consider those facts apparent from the face of the complaint, matters of which the court can take judicial notice, and judicial admissions of the record, not evidentiary material outside the pleadings. He claims the petition for rule to show cause was legally insufficient on its face because it was undisputed that Michael was an ophthalmologist who performed elective surgeries, complied with the Governor's executive orders, and was unable to be employed which was a "loss of employment" as required by the agreed order. He further claims that Kelly could not allege anything in her petition for rule to show cause that would entitle her to relief.

¶ 20    In response, Kelly claims that the trial court did not improperly deny Michael's motion to dismiss because an evidentiary hearing was required. She claims her petition was legally sufficient

9

because issues of fact arose regarding whether Michael's claims of a decreased monthly income and that he was operating with a deficit balance each month were true based on her answers to Michael's motion to modify. Kelly further claims that the court was not required to take judicial notice of Michael's claim that his income decreased, and that Michael refused to comply with discovery related to the financial issues alleged in his motion to modify.[2]

¶ 21   Here, we must determine whether Kelly's petition for rule to show cause sufficiently stated a cause of action. The petition was based on paragraphs 4 and 5 of the parties' November 27, 2018, agreed order and Michael's May 6, 2000, emergency petition to modify child support and spousal maintenance. The petition claimed that pursuant to the agreed order, Michael was required to pay Kelly $6000 for each month that he took advantage of the reduced child support because Michael filed a motion to modify child support. Kelly's petition appears to claim that Michael's petition to modify did not fall within the limited exceptions set forth in paragraphs 4 and 5 that would allow Michael to file a petition to modify. However, Kelly's petition does not address any of the exceptions set forth in the agreed order or state why she believed the exceptions did not apply. Despite the lack of specificity, based on the response to Michael's petition and the arguments provided before the trial court, it is clear that Kelly was disputing Michael's allegations of a loss of his employment and, more specifically, a reduction in his income.

¶ 22   In response to Kelly's petition, Michael filed a motion to dismiss.[3] The majority of the pleading contended that portions of paragraph 4 and all of paragraph 5 were void for being contrary to public policy and, therefore, unenforceable. Alternatively, Michael contended that his petition

---

[2]While Kelly argues on appeal that Michael refused to comply with her discovery request, our review of the record fails to reveal any certificate of service related to discovery as required by Illinois Supreme Court Rule 201(m) (eff. July 1, 2014) or any motion to compel filed by Kelly.
   [3]Nothing in the motion specified whether Michael was seeking relief under section 2-615 (735 ILCS 5/2-615 (West 2020)), section 2-619 (*id.* § 2-619), or under both pursuant to section 2-619.1 (*id.* § 2-619.1).

10

was based on the language in the agreed order allowing for the filing of a modification for "an accident or similar event resulting in the substantial reduction of his income" due to the COVID-19 pandemic.

¶ 23 On appeal, Michael claims that Kelly's petition was insufficient as a matter of law because his motion to modify fell within the exceptions set forth in paragraphs 4 and 5 of the agreed order and his dismissal request could be granted upon review of the pleadings and by taking judicial notice. We disagree. "Courts may take judicial notice of matters which are commonly known or of facts which, while not generally known, are readily verifiable from sources of indisputable accuracy." (Internal quotation marks omitted.) *Murdy v. Edgar*, 103 Ill. 2d 384, 394 (1984). Therefore, while a court may take judicial notice of a world-wide pandemic and the restrictions promulgated by the Governor of Illinois and the Illinois Department of Health, a court cannot take judicial notice of a party's alleged reduction in income due to the pandemic and the ensuing restrictions. One reason is due to the fact that the United States Department of the Treasury was providing financial assistance to small businesses via COVID-19 loans pursuant to the Coronavirus Aid, Relief, and Economic Security (CARES) Act (Pub. L. No. 116-136 *et seq*. (eff. Mar. 27, 2020)). More specifically, the Paycheck Protection Program (Pub. L. No. 116-139, § 1 *et seq*. (eff. Mar. 27, 2020)) was available to business with fewer than 500 employees per physical location and provided loans up to $10 million, to cover payroll, benefits, and salaries, as well as interest payments, rent, and utilities. As such, just because a business may have been restricted from providing services during the initial stages of the pandemic, it might have received funds to cover salaries from the government during that period.

¶ 24 Here, Kelly's petition for rule to show cause alleged that Michael's petition to modify failed to fall within the restrictive terms found in paragraph 4 of the agreed order. The petition

11

raised a question of fact as to whether Michael actually suffered a "substantial reduction of his income." There is no dispute that Michael's request for modification contained only allegations of lost income with no evidence to support the claim. As such, taking the allegations set forth in Kelly's petition for rule to show cause as true, we cannot say, as a matter of law, that Kelly's petition failed to state a claim on which relief could be granted. Accordingly, we affirm the trial court's denial of Michael's motion to dismiss on this basis.

¶ 25                                    The Agreed Order

¶ 26    Michael also claims that the trial court misapplied existing law as to the interpretation of agreed orders and misconstrued the difference between void and voidable in striking paragraphs 3 and 6, in addition to paragraphs 4 and 5. In support, Michael argues that the trial court incorrectly found that paragraphs 3 and 6 were related to paragraphs 4 and 5 instead of determining whether paragraphs 3 and 6 were essential to the overall agreement. He further argues that the trial court improperly exercised jurisdiction regarding Kelly's request to set aside paragraph 3 as there was no pending pleading and Kelly's request was a collateral attack on a voidable provision, not a void provision, of the order. Finally, Michael contends that the trial court incorrectly interpreted Illinois law by finding the parties were not entitled to modification of child support in the agreed order because neither party filed a petition or motion to modify.

¶ 27    In response, Kelly argues that Michael's void versus voidable argument is irrelevant. She claims that the trial court correctly found paragraphs 3 and 6, setting the child support obligations and educational support, were "related to" paragraphs 4 and 5. Kelly contends that the question is whether the stricken portion was essential to the bargain or if the parties would have entered into the remaining agreement without the stricken portion. Kelly further contends that the trial court found that the parties would have entered into the remaining agreement, related to moving, the

12

choice of schools, and visitation, even if child support was not addressed, and therefore the trial court properly struck paragraphs 3 and 6. Finally, Kelly argues that the trial court correctly interpreted Illinois law by finding the parties were not entitled to modification of child support at the time the 2018 agreed order was entered because neither party filed a pleading to modify child support at that time.

¶ 28 Here, although Kelly argued before the trial court that paragraphs 4 and 5 were not void, such argument was discarded in this appeal leaving only the issue of whether the trial court erred when it severed paragraphs 3 and 6 after finding paragraphs 4 and 5 void. Review of a motion to reconsider based solely on the trial court's purported misapplication of existing law is *de novo*. *In re Marriage of Vondra*, 2013 IL App (1st) 123025, ¶ 9 (citing *Bank of America, N.A. v. Ebro Foods, Inc.*, 409 Ill. App. 3d 704, 709 (2011)).

¶ 29 Section 184 of the Restatement (Second) of Contracts (1981) states:

"(1) If less than all of an agreement is unenforceable under the rule stated in § 178, a court may nevertheless enforce the rest of the agreement in favor of a party who did not engage in serious misconduct if the performance as to which the agreement is unenforceable is not an essential part of the agreed exchange.

(2) A court may treat only part of a term as unenforceable under the rule stated in Subsection (1) if the party who seeks to enforce the term obtained it in good faith and in accordance with reasonable standards of fair dealing."

¶ 30 This section of the Restatement Second was endorsed by our supreme court in *Kinkel v. Cingular Wireless, LLC*, 223 Ill. 2d 1, 47 (2006). In *Kinkel*, the court stated that to determine what, if anything, should be stricken, the court first looked to see if the offending paragraph was an essential term of the contract.

¶ 31    "Whether the performance is an essential part of the agreed exchange depends on its relative importance in light of the entire agreement between the parties." Restatement (Second) of Contracts § 184(1) cmt. a (1981). "The rationale for this rule is obvious; complex, multipart agreements on which there may have been significant reliance should not be void as a whole solely because some small part is against public policy." *People v. McNett*, 361 Ill. App. 3d 444, 448 (2005). "If the performance to which the agreement is unenforceable is an essential part of the agreed exchange, the inequality will be so great as to make the entire agreement unenforceable." Restatement (Second) of Contracts § 184(1) cmt. a (1981).

¶ 32    Here, while Kelly's counsel claimed the offensive language was an essential term of the contract, there is no language in the agreement supporting such claim. "When a contract is ambiguous or silent on a disputed issue, a court may, in order to determine the intent of the parties at the time of contracting, consider the contemporaneous or subsequent acts of the parties to the contract." *Vole, Inc. v. Georgacopoulos*, 181 Ill. App. 3d 1012, 1021 (1989). Based on the parties' actions in the 15 months following the entry of the agreed order, it is our belief that the parties' intent at the time of contracting was to enter into an agreement addressing the multiple issues that arose following the completion of their initial dissolution proceeding rather than initiate or continue litigation. Such action should be commended as there is a strong public policy supporting such agreements as evidenced by the statute allowing for same. 750 ILCS 5/502 (West 2018). As such, we note the strong public policy interest in upholding the agreement.

¶ 33    In considering whether the stricken provisions were essential, we note that the language in paragraph 4 prohibited both parties from requesting a "further" reduction or increase in child support. Similarly, the penalty language in paragraph 5 was only triggered if Michael sought "a reduction in child support other than as indicated herein." The unenforceable language applied

14

only to potential future events. Conversely, the remaining terms in the agreed order and agreed parenting agreement related solely to actions taking place immediately or within 30 days after the order was entered. As such, we do not find that inequality that would arise, to either party, if the unenforceable language was severed.

¶ 34    We find it relevant that both parties fully performed their obligations pursuant to the agreed order and therefore incurred both the burdens and benefits stemming from the agreed order. Kelly relocated to Missouri, enrolled the children in new schools, received full payment of Michael's remaining debt stemming from the original judgment, and received a reduction in her obligation to fund the section 529 accounts. Michael received additional parenting time with the children, closure related to the debt stemming from the original judgment, and a reduction in his child support.

¶ 35    We also note that when the parties were initially divorced, child support was based solely on Michael's income as the noncustodial parent and the number of children involved. 750 ILCS 5/505 (West Supp. 2015). Pursuant to statute, Michael was required to pay 32% of his net income in child support. The trial court, however, reduced the amount, so Michael's obligation was only 28.5% of his net income. In 2018, when the agreed order was entered, the statutory guidelines were no longer the same; the child support calculation was now based on the incomes of both parents (including amounts received for and paid toward maintenance), the amount of parenting time the children had with each parent, and who was paying for health insurance, or any other extraordinary costs related to the children. 750 ILCS 5/505(a) (West 2018).

¶ 36    We do not find it a coincidence that despite the statutory change and both parties being represented by counsel, neither the agreed order nor the parenting agreement addressed the income of either Michael or Kelly after her relocation to Missouri, whether the tuition at the private schools

15

where the children would be enrolled in Missouri was reduced, stayed the same, or increased pursuant to the relocation, the amount paid for health insurance, or provided any child support calculation related to the parties' parenting time with the children. Instead, we believe the agreement was fully negotiated and intended to address all the issues that would immediately stem from Kelly's relocation from Illinois to Missouri.

¶ 37     Finally, we note, that while the trial court found the child support addressed in paragraphs 3 and 6 was directly related to paragraphs 4 and 5, such finding failed to consider the statutory relationship between child support, parenting time and payment of extraordinary school expenses, extracurricular activity expenses as well as health insurance. We also find the trial court's reliance on the lack of pleadings on file at the time the agreed order was entered unsound. As noted above, Illinois has a strong public policy supporting amicable settlement of disputes. A trial court has authority to enter an agreed order despite the lack of an underlying petition to modify (*In re Marriage of Nau*, 355 Ill. App. 3d 1081, 1085-86 (2005)) if the court is satisfied that entry of the order is in the best interest of the children. *In re Marriage of Smith*, 347 Ill. App. 3d 395, 400 (2004). Stipulations, such as those found in an agreed order, "simplify, shorten, or settle litigation between parties" and therefore such acts should be "encouraged." *People ex rel. Gibbs v. Ketchum*, 284 Ill. App. 3d 70, 78 (1996).

¶ 38     Accordingly, we find that the language prohibiting either party from requesting an increase or reduction in child support found in paragraph 4 and the language providing a penalty if a reduction in child support was requested was properly severed from the agreed order and further find that the prohibited paragraphs did not include essential terms of the contract. As such, we affirm the trial court's severance of paragraphs 4 and 5 of the agreed order but vacate the trial court's severance of any other language from the agreed order.

16

¶ 39                                    III. CONCLUSION

¶ 40    For the reasons stated herein, we affirm the trial court's order denying Michael's motion to dismiss Kelly's petition for rule to show cause as failing to state a cause of action, affirm the trial court's finding that the restrictive language in paragraphs 4 and 5 was void as being contrary to public policy, affirm the trial court's severing of that language from the agreed order, and vacate the trial court's severance of paragraphs 3 and 6 from the agreed order.


¶ 41    Affirmed in part and vacated in part.