PRAIRIE MANAGEMENT CORPORATION, Plaintiff-Appellee, v. ANNA BELL, Defendant-Appellant.

First District (1st Division)   No. 1—95—2645

Opinion filed June 16, 1997.

Legal Assistance Foundation, of Chicago (Lawrence D. Wood and Jennifer J. Payne, of counsel), for appellant.

Sanford Kahn, Ltd., of Chicago (Richard W. Christoff, of counsel), for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiff, Prairie Management Corporation, filed a forcible entry and detainer action against defendant, Anna Bell, seeking to recover possession of the premises in which she and her five children live. After a bench trial, the trial court granted plaintiff possession of defendant's residential unit. Defendant's motion to reconsider and vacate the judgment for possession was denied. On appeal, defendant raises the following issues: (1) whether some of the testimony elicited at trial was inadmissible; (2) whether the trial court's reliance upon the inadmissible evidence constitutes reversible error; (3) whether, assuming that all the testimony elicited at trial was admissible, the court's decision was against the manifest weight of the evidence; (4) whether plaintiff's failure to serve its termination notice in accordance with the requirements of the governing statute deprived the trial court of subject-matter jurisdiction; and (5) whether plaintiff's failure to serve its termination notice in accordance with the requirements of the governing statute prevented it from establishing an essential element of its *prima facie* case at trial.

On May 16, 1990, defendant entered into a written lease, subsequently extended, for the premises at 5523 West Washington, Unit 103, Chicago, Illinois, a residential unit at Boulevard Commons Apartments, managed by plaintiff. On February 24, 1995, plaintiff delivered a termination notice to defendant by placing a copy under her door and sending another copy to her by first-class mail. The notice alleged that defendant had violated her lease agreement by engaging in "the sale and distribution of illegal drugs on the premises, which caused the Chicago Police Officers to kick [her] door in on Tuesday night, February 21, 1995."

On May 11, 1995, plaintiff filed a forcible entry and detainer action against defendant seeking possession of the premises. On May 26, 1995, the trial court granted defendant's motion for a continuance and set the case for trial on June 16, 1995.

At trial, plaintiff's first witness was Eric Sanders, a Chicago police officer who works as an off-duty agent for plaintiff's security office. He has been employed by the city as a police officer for 12 years, working as a narcotics officer fighting organized crime for five years. He was working at Boulevard Commons Apartments on February 21,

1995. At approximately 11 p.m., he observed several young men selling illegal drugs on defendant's back porch. Prior to exiting his vehicle, Officer Sanders heard these men hollering "rocks," which he understood to mean rock cocaine. He approached defendant's back porch stairs and announced his office. Two of these men ran into defendant's apartment through the back door. When Officer Sanders reached the apartment, the door was closed in his face. He drew his gun and kicked the door open. Upon entering defendant's apartment, he observed a "bunch of kids." Defendant was not present; however, the officer stated that he believed he saw defendant's brother in the apartment babysitting her children.

Two days later, Officer Sanders again observed several men on defendant's back porch selling drugs. He called the 15th District tactical team, who arrived at the scene. Officer Sanders, three on-duty police officers, and two off-duty officers then proceeded back to defendant's unit, where they arrested a man who ran through and out of defendant's apartment carrying a controlled substance.

Officer Sanders concluded his testimony by stating that he spoke with defendant around midnight on February 23, 1995, and told her that he had been to her apartment on two occasions, that he believed drugs were being sold out of her unit, and that he was going to report her activity to plaintiff. Defendant responded by stating that she was not selling drugs.

Plaintiff's second witness, Thea McCaskill, identified herself as plaintiff's property manager. She stated that she received a report from Officer Sanders regarding both the sale of the illegal drugs at defendant's unit and the kicking in of her door. She testified that within a couple of days of this report, her office received a call to repair defendant's door and the repairs were made. As a result of Officer Sanders' report, she issued and served a 10-day notice to quit to defendant. This notice stated that defendant's lease would be terminated on March 8, 1995, due to material noncompliance with the lease agreement. The notice stated that the activity of selling and distributing illegal drugs is a direct violation of both defendant's approved HUD apartment lease and the lease addendum for drug-free housing, which warns that "a single violation shall be good cause for termination of the lease." The notice also stated that defendant violated the house rules and regulations, which provide that "illegal drug use, sale or distribution of narcotics in or about the premises of the property *** shall be considered a violation of the lease and cause for eviction."

Ms. McCaskill further testified that defendant came into her office to discuss the allegations contained in the notice within the 10-

day period provided for in the notice. Defendant claimed that the comments about her were untrue and that someone was "picking on her."

Defendant testified that Officer Sanders and the two other detectives who accompanied him to her apartment did not break down her door. Defendant claimed that Officer Sanders asked her if she saw anyone with a gun. She replied that she had not. Defendant testified that "it was nothing about drugs," that no one had run through her apartment, and that she was cooking.

After hearing all of the evidence, the trial court entered judgment for possession of defendant's unit in favor of plaintiff, staying enforcement of the order for 14 days. On June 30, 1995, defendant filed an amended motion to reconsider and vacate the judgment. On the same date, the court denied the motion staying enforcement of the possession order for the period through July 14, 1995. Defendant filed a motion to stay enforcement of the judgment for possession pending appeal that was granted by the court. On July 26, 1995, defendant filed her timely notice of appeal.

■ We are first asked to determine whether the trial court erred as a matter of law in allowing plaintiff to present evidence about the February 23, 1995, incident since it was not mentioned in the termination notice. Defendant claims that because the notice cited only to the incident occurring on February 21, 1995, testimony relating to any other occurrence should have been excluded at trial.

The general rule with respect to a landlord's notice to quit is that it must adequately inform the tenant of the landlord's intent to end the tenancy. *Bismarck Hotel Co. v. Sutherland*, 92 Ill. App. 3d 167, 173, 415 N.E.2d 517, 521 (1980). Paragraph 23(c) of defendant's lease states that a notice of termination for material noncompliance must state the grounds for termination with "enough detail for the tenant to prepare a defense."

In this case, plaintiff's termination notice referred only to the first time that Officer Sanders witnessed drugs being sold at defendant's apartment. The incident observed by Officer Sanders two days later involved the same illegal activity. Its inclusion in the termination notice, while perhaps adding precision, would not have provided defendant with any additional information to assist in the preparation of her defense nor would it have made any clearer plaintiff's intent to end defendant's tenancy.

For the same reason, we do not find that it was improper for the trial court to permit testimony regarding the February 23 incident. Officer Sanders was merely testifying about the events he witnessed at defendant's apartment giving rise to the termination notice. In

fact, the trial judge noted that such testimony was appropriate given that defendant denied the entire incident described in the termination notice. We are unpersuaded by the case relied on by defendant, *Schneider v. Danielly*, 344 Ill. App. 546, 101 N.E.2d 604 (1951) (abstract of op.), since the facts in that case are distinguishable from those presented by the instant case.

In *Schneider*, the tenant's termination notice specified that the tenant was being evicted for committing acts that created a nuisance; at trial, evidence was introduced showing that the tenant had refused to allow the landlord onto the premises. In that case, the evidence presented at trial involved grounds for termination entirely different from those provided in the termination notice. In this case, the testimony presented at trial involved the same activity that was the cause for possession. Contrary to defendant's contention, the admission of testimony relating to the incident occurring on February 23, 1995, is not prohibited by either defendant's lease agreement or applicable case law.

■ Since the testimony was admissible, the trial court's reliance on it does not constitute reversible error. It is well established that the trial court's decision will not be reversed unless it is contrary to the manifest weight of the evidence. *Fields v. Sax*, 123 Ill. App. 3d 460, 463, 462 N.E.2d 983, 986 (1984). "[E]ven if the reviewing court disagrees with the trial court, or might have come to a different conclusion, the decision of the trial court will not be reversed if there is evidence to support it." *Jaffe Commercial Finance Co. v. Harris*, 119 Ill. App. 3d 136, 142, 456 N.E.2d 224, 229 (1983).

■ In this case, Officer Sanders testified that he observed the sale of illegal drugs at defendant's apartment on two separate occasions. A man was arrested for the possession of a controlled substance on defendant's premises. Ms. McCaskill's testimony corroborated Officer Sander's testimony that defendant's door had been kicked in and had to be repaired. Defendant admitted that Officer Sanders and two other armed police officers came into her apartment on February 23, but denied that anyone ran through her unit, that her door had been kicked in, and that it had anything to do with drugs. Conflicts in the testimony are to be resolved by the trier of fact. *Jaffe*, 119 Ill. App. 3d at 142, 456 N.E.2d at 229. In this case, the trier of fact found plaintiff's witnesses more persuasive than defendant. We do not find that the court's ruling in plaintiff's favor was against the manifest weight of the evidence presented at trial.

■ Next, we are asked to consider whether plaintiff's alleged failure to serve its termination notice in accordance with state law deprived the trial court of subject-matter jurisdiction. The Illinois

Forcible Entry and Detainer Act (735 ILCS 5/9—101 *et seq.* (West 1994)) provides for three methods of serving a notice of termination upon a tenant who is in actual possession of the premises:

> "Any demand may be made or notice served by delivering a written or printed, or partly written or printed, copy thereof to the tenant, or by leaving the same with some person of the age of 13 years or upwards, residing on or in possession of the premises; or by sending a copy of the notice to the tenant by certified or registered mail, with a returned receipt from the addressee ***." 735 ILCS 5/9—211 (West 1994).

■ In this case, plaintiff delivered its notice by placing one copy under defendant's door and sending another copy to her by first-class mail. Accordingly, defendant claims that the statutory requirements were not met and the trial court was without subject-matter jurisdiction.

We reject defendant's argument for a number of reasons. First, the manner of service of a landlord's termination notice is not a jurisdictional issue. This court in *Morris v. Martin-Trigona*, 89 Ill. App. 3d 85, 411 N.E.2d 530 (1980), held that the failure to comply with the statutory notice requirements may serve as a defense but it does not deprive the court of subject-matter jurisdiction.

Second, the methods of service suggested in the relevant statute are not meant to be exhaustive. See *Ziff v. Sandra Frocks, Inc.*, 331 Ill. App. 353, 355, 73 N.E.2d 327, 328 (1947) ("The statute does not purport to restrict the making of a demand or the service of a notice to the particular methods stated in the statute"). Illinois cases have upheld a landlord's written notice even when the method of service deviated slightly from those noted in the statute. See, *e.g.*, *Vole, Inc. v. Georgacopoulos*, 181 Ill. App. 3d 1012, 1019, 538 N.E.2d 205, 210 (1989) (recognizing that the statutory provision requiring that the notice be sent by registered mail was intended merely to insure delivery rather than to determine the validity of service).

Finally, defendant never objected to plaintiff's termination notice and admitted to actual receipt of the notice. In *Vole*, this court noted that the "object of notice is to inform the party notified, and if the information is obtained in any way other than formal notice, the object of notice is attained." *Vole*, 181 Ill. App. 3d at 1019, 538 N.E.2d at 210. In *Ziff*, this court upheld the service of a landlord's termination notice against the tenant's contention that the notice was not served in accordance with the methods articulated in the statute, where the tenant expressly admitted actual receipt of the notice. *Ziff*, 331 Ill. App. at 355, 73 N.E.2d at 328. Defendant in this case also admittedly received actual notice of plaintiff's notice; she cannot claim now that

plaintiff's failure to strictly comply with the statutory service requirements is fatal to its case.

Since plaintiff satisfied the service requirement, plaintiff properly established all elements of its *prima facie* case.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL, P.J., and GALLAGHER, J., concur.