2024 IL App (1st) 231282-U

FIFTH DIVISION
August 2, 2024

No. 1-23-1282

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| DEMOSTHENIS TSATSANIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 M 1714402 |
| | ) | |
| RENEE MacDONALD, | ) | Honorable |
| | ) | Christ Stanley Stacey, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE MIKVA delivered the judgment of the court.
Justice Lyle concurred in the judgment.
Presiding Justice Mitchell specially concurred, with opinion.

**ORDER**

¶ 1　*Held*:　The jury's verdict in favor of the landlord in this eviction action is affirmed. The trial court did not err as a matter of law in denying the tenant's motions to dismiss and did not abuse its discretion in denying her motion to deem facts admitted or in barring as irrelevant evidence relating to a co-owner's interest in the property. The tenant's claims of trial errors also lack merit.

¶ 2　Plaintiff Demosthenis Tsatsanis sought to evict his tenant, defendant Renee MacDonald, for refusing to vacate the rental property located at 2623 West Evergreen Avenue, Unit 2E, in Chicago upon the termination of her tenancy. Following the denial of Ms. MacDonald's motions

to dismiss the action on various grounds, the matter was tried before a jury, which awarded possession of the property to Mr. Tsatsanis. Ms. MacDonald now appeals and, for the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4                                    A. Pretrial Proceedings

¶ 5      Mr. Tsatsanis initially filed this eviction action on September 14, 2022, but named the wrong defendant. He amended his complaint to correct that error on December 27, 2022. Mr. Tsatsanis alleged that he rented the property to Ms. MacDonald pursuant to an attached lease agreement, which expired by its own terms on May 31, 2022; that Ms. MacDonald did not vacate the property on or before that date; that on June 28, 2022, he served her with notice that her tenancy would terminate in 60 days, which meant by the end of August 2022; and that as of the filing of the complaint, she had still not vacated the property.

¶ 6      Ms. MacDonald moved to dismiss. She asserted in an affidavit both that Mr. Tsatsanis had not properly served her with the termination notice and that he had waived his right to recover possession of the property on the termination date by continuing to accept rent from her after the expiration of her lease. Following argument, the trial court denied the motion to dismiss in a one-page order entered on April 28, 2023. Although that order did not include the court's reasoning, the court explained the basis for its ruling in subsequent orders, including its May 15, 2023 order, denying Ms. MacDonald's motion to reconsider. The court acknowledged that there were "questions regarding the sufficiency of [Mr. Tsatsanis's] proof of service," but concluded that dismissal on that basis was not warranted, given that "the record show[ed] that [Ms. MacDonald] actually received the notice" and knew she needed to move out.

¶ 7      The court treated a separate emergency motion to reconsider filed by Ms. MacDonald as a

2

second motion to dismiss. Ms. MacDonald attached to that motion the affidavit of Eleni Tsatsanis, who averred that she had been the sole owner of the property before her marriage to Mr. Tsatsanis, that she was now a co-owner with him and listed as a landlord on Ms. MacDonald's lease, that she never signed a notice of termination, that this eviction action was initiated after she filed for divorce from Mr. Tsatsanis and without her consent, and that she had agreed to continue renting the premises to Ms. MacDonald on a month-to-month basis.

¶ 8    The court denied this second motion to dismiss too. It noted in its June 12, 2023, order that Eleni's affidavit narrowly stated that she never "signed" the notice of termination, not that she had in fact objected to the plan to terminate the tenancy. Mr. Tsatsanis averred in his own affidavit, supported by text messages and other evidence, that Eleni had assisted in his attempt to terminate the tenancy when the termination notice was served and only later changed her mind and objected to Ms. MacDonald's eviction. The court concluded that none of that really mattered, however, because the unanimous consent of all owners is not required to give notice of nonrenewal, to terminate a tenancy, or to evict a month-to-month tenant. However, the court's understanding was that unanimous consent of all owners was required to enter into a lease and, to the extent that Eleni had attempted to enter into a new lease agreement with Ms. MacDonald, the law prohibited her from doing so without the consent of her co-owner.

¶ 9    On June 20, 2023, Ms. MacDonald filed an emergency motion for facts to be deemed admitted under Illinois Supreme Court Rule 216 (eff. July 1, 2014). She asserted that she had served requests to admit on Mr. Tsatsanis on May 5, 2023, and that he had failed to answer those requests within 28 days, as required by the rule. Mr. Tsatsanis argued that Ms. MacDonald had herself not strictly complied with the rule's requirements. The court denied the motion but ordered Mr. Tsatsanis to respond to the requests to admit within seven days, which he did.

¶ 10 Prior to trial, Mr. Tsatsanis filed a motion *in limine* to bar the introduction of any evidence relating to Eleni's interest in the property. He argued that there was no dispute between the parties that Eleni had initially agreed to terminate Ms. MacDonald's tenancy but changed her mind after initiating divorce proceedings against Mr. Tsatsanis. Because the court had already concluded both that Eleni's continued support was not necessary for the eviction action to proceed and that she had no ability to unilaterally allow Ms. MacDonald to remain or enter into a new lease with her, Mr. Tsatsanis argued that any evidence relating to her ownership interest in the property or her wishes with respect to Ms. MacDonald continuing as a month-to-month tenant were irrelevant. The court agreed and, over Ms. MacDonald's objection, granted the motion.

¶ 11 At the pretrial conference, counsel for Ms. MacDonald argued that the court's ruling on the motion *in limine* was unfair because Mr. Tsatsanis had indicated he planned to introduce documents that mentioned Eleni, and it would be impossible to cross-examine him properly on those documents without mentioning her. The court declined to alter its ruling, stating that Eleni's existence as a co-owner or as a former sole owner of the property "[was]n't an issue in this case" because they were not trying title but merely settling the question of who had a superior right to possession of the property, Mr. Tsatsanis or Ms. MacDonald.

¶ 12 When defense counsel later indicated that he planned to introduce Eleni's affidavit at trial, the court said "[t]hat violates the ruling." To the extent that Ms. MacDonald planned to testify that Eleni allowed her to stay beyond the term of her lease, the court likewise ruled that was "not relevant," and such testimony would not be allowed. The court also ruled that Eleni's petition for dissolution of marriage and an order of protection entered in the dissolution proceedings could not be admitted into evidence.

¶ 13                                    B. Trial

¶ 14    A jury trial was held on July 13, 2023. Mr. Tsatsanis testified that he had owned the property in question since January 2021. He collected rent, made necessary repairs, and interfaced with tenants. Mr. Tsatsanis identified a copy of his lease with Ms. MacDonald, bearing his electronic signature, which specified that the lease would run from June 7, 2021, through May 31, 2022. It provided that, if Ms. MacDonald failed to surrender possession of the property following the expiration of that term, she could be treated as a tenant at sufferance owing liquidated damages or her holdover could be treated as an offer to renew the lease for one year. If Mr. Tsatsanis did not elect either of those options within 30 days of the expiration of the term, however, a month-to-month tenancy would result.

¶ 15    Mr. Tsatsanis testified that he corresponded by email with Ms. MacDonald in June 2022 about having the condo appraised, and on June 28, 2022, he sent her a letter by certified mail telling her he was choosing not to renew the lease. That letter, entered into evidence, stated:

> "Renee,
>
> As previously discussed, we will not be extending your lease for our property at 2623 West Evergreen Avenue, Apartment 2E, Chicago, Illinois 60622. This will serve as your 60-days' notice to vacate the property by 8/31/2022.
>
> Please make arrangements to have all of your possessions moved out by the end of August 2022.
>
> Thank you for your understanding."

The letter was electronically signed by Mr. Tsatsanis and Eleni and was accompanied by a certified mail receipt dated June 28, though that receipt was not signed by a recipient. When the tracking number was entered on the USPS website, the last entry for the letter read: "Your item was

delivered to an individual at the address at 1:37 p.m. on June 30, 2022 in CHICAGO, IL 60622."

As far as Mr. Tsatsanis knew, Ms. MacDonald was the only person living in the unit at that time.

¶ 16    Mr. Tsatsanis identified several other email communications he had had with Ms. MacDonald. In a July 27, 2022, email to him, she stated:

> "I didn't receive the letter, and I don't know who did. I received your termination of the lease today and as you know once you give me the notice, since you didn't give me 60-days notice, then I can stay 90 days which would put it at October 27th. When I have a date I am planning to go move out I will let you know. Until you receive my move out date you can assume that I have not yet made arrangements to move out and there is no need to ask me about the move-out date."

¶ 17    On August 25, 2022, Mr. Tsatsanis emailed Ms. MacDonald, saying: "Hello Renee, We have sent you certified mail stating we are not renewing the lease, and the 60 days ends September 1st. Unfortunately, we will not be accepting your rent for September or any rent payments you send going forward. Please cancel your Zelle payment. Thanks." Mr. Tsatsanis testified that he also corresponded with Ms. MacDonald by text message to tell her that he did not wish to continue the lease and said "she would just not respond back."

¶ 18    The two exchanged additional emails in September 2022, with both concluding that the matter could only be resolved in court. Mr. Tsatsanis initiated this lawsuit shortly thereafter. At the time of trial, he believed Ms. MacDonald had made no arrangements to move out and was still living in the unit.

¶ 19    Mr. Tsatsanis acknowledged on cross-examination that the delivery confirmation for the termination notice did not say who it had been left with. When asked why he waited until nearly a month after the lease had expired to send it, he explained, "Because I've never had to deal with

this before. I've just talked with my tenants and they moved out when their lease was up." Mr. Tsatsanis did not know whether the United States Postal Service had changed its procedures for obtaining signatures in light of the COVID-19 pandemic.

¶ 20     Throughout cross-examination of Mr. Tsatsanis, and during the direct examination of Ms. MacDonald, the court repeatedly sustained Mr. Tsatsanis's objections when Ms. MacDonald tried to raise Eleni's ownership interest in the property.

¶ 21     The court denied Ms. MacDonald's motion for a directed verdict.

¶ 22     Ms. MacDonald then took the stand. She testified that she moved into the unit in mid-June 2021 and from that time on had continuously paid rent. When asked if she ever received a notice dated June 28, 2022, stating that her tenancy would be terminated, she said: "No. I was aware, in general, that at some point I would need to move out. And that's why I continued to pay rent." She clarified to say that, while she did not receive the notice by certified mail, Mr. Tsatsanis later emailed her a copy of the notice on July 27, 2022. He never gave her a physical copy of the letter in person, however, despite the fact that he was at the unit on several occasions after he sent that email. Ms. MacDonald confirmed that no one else lived with her at the property who could have received a notice sent by certified mail.

¶ 23     Ms. MacDonald agreed on cross-examination that she offered to move out of the unit in November 2022 but explained that "[t]hey didn't agree to that date," and so it came and went without her moving. She testified that she tried to buy a place, but the inspection fell through, and then she had some health issues that forced her to postpone her search. Although she never complained in writing, Ms. MacDonald testified that she had verbal conversations with Mr. Tsatsanis in which she protested that she had not received proper notice of the termination of her tenancy.

¶ 24    Mr. Tsatsanis's counsel argued in his closing that Ms. MacDonald either received the 60-day notice by certified mail on June 30, 2022, or she received it by email on July 27, 2022. Because in either case she should have moved out before December 2022, when Mr. Tsatsanis named her in this action, he was entitled to an award of possession.

¶ 25    Ms. MacDonald's counsel argued in his closing that if the jury found the notice of termination was not properly served, the result was that a month-to-month tenancy was created, and as a month-to-month tenant who had continued to pay rent, Ms. MacDonald should not be evicted.

¶ 26    The jury returned a verdict against Ms. MacDonald and in favor of Mr. Tsatsanis, and the court entered an order of eviction the same day.

¶ 27    Ms. MacDonald now appeals.

¶ 28                                    II. JURISDICTION

¶ 29    The trial court entered its eviction order in this matter on July 13, 2023, and Ms. MacDonald filed her notice of appeal on July 17, 2023. We have jurisdiction pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017), governing appeals from final judgments entered by the circuit court in civil cases.

¶ 30    Mr. Tsatsanis argues, however, that we lack jurisdiction to consider the trial court's April 28, 2023, denial of Ms. MacDonald's first motion to dismiss because she did not list that order in her notice of appeal. It is true that our jurisdiction is limited to "the judgments or parts of judgments specified in the notice." *People v. Lewis*, 234 Ill. 2d 32, 37 (2009). But a notice is sufficient to confer jurisdiction if, "considered as a whole and construed liberally, it fairly and adequately identifies the complained-of judgment." *Id.* Ms. MacDonald makes clear in her notice that she is appealing the trial court's June 12, 2023, order, in which the court not only denied her second

motion to dismiss, but extensively restated and reaffirmed its prior ruling on her first motion to dismiss. Construed liberally, we find that Ms. MacDonald's notice of appeal adequately apprises Mr. Tsatsanis of the scope of her appeal, and we have jurisdiction to consider the trial court's denial of both of her motions to dismiss.

¶ 31                                III. ANALYSIS

¶ 32    This is an eviction action under the Forcible Entry and Detainer Act (Act) (735 ILCS 5/9-101, *et seq.* (West 2022)), a "limited and distinct proceeding," the sole purpose of which is to determine who is entitled to immediate possession of real property. *Wells Fargo Bank, N.A. v. Watson*, 2012 IL App (3d) 110930, ¶ 14. Such an action is proper where a lessee "holds possession without right after the termination of the lease or tenancy by its own limitation, condition or terms, or by notice to quit or otherwise." 735 ILCS 5/9-102(a)(4) (West 2022).

¶ 33    The Chicago Residential Landlord and Tenant Ordinance (RLTO) provides that, "[f]or any residential tenancy of six months to three years, the landlord shall notify the tenant in writing at least 60 days prior to the stated termination date of the rental agreement of the landlord's intent to terminate a periodic tenancy" or "not renew a fixed-term rental agreement." Chicago Municipal Code § 5-12-130(j)(2) (amended Nov. 24, 2020). If the landlord fails to do so, "then [the] tenant may remain in the dwelling unit for up to 60 days after the date on which written notice is given to the tenant, regardless of the termination date specified in the notice or in an existing rental agreement." *Id.* Notice may be served by hand-delivering a written or printed copy to the tenant, by leaving it with some person over the age of 13 who resides in the premises, "or by sending a copy of the notice by certified or registered mail, with a returned receipt from the addressee." 735 ILCS 5/9-211 (West 2022). If no one is in actual possession of the property, notice may be posted on the premises. *Id.*

9

¶ 34          A. Mr. Tsatsanis's Motion to Dismiss this Appeal as Moot

¶ 35    We first address Mr. Tsatsanis's motion, taken with the case, to dismiss this appeal as moot. Mr. Tsatsanis asserts in an affidavit that Ms. MacDonald finally vacated and relinquished possession of the unit to him on December 31, 2023. He insists that her appeal from the trial court's judgment granting him possession of the unit is therefore moot. "Claims of mootness present questions of law, which we review *de novo*." *Universal Metro Asian Services Ass'n v. Mahmood*, 2021 IL App (1st) 200584, ¶ 17.

¶ 36    "As a general rule, courts in Illinois do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided." *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009). An appeal is moot when "it presents or involves no actual controversy, interests or rights of the parties, or where the issues have ceased to exist." (Internal quotation marks omitted.) *Richardson v. Rock Island County Officers Electoral Board*, 179 Ill. 2d 252, 256 (1997). We agree with Mr. Tsatsanis that the appeal of an eviction judgment is generally rendered moot where the tenant no longer possesses or can be placed in possession of the premises. *Poulos v. Reda*, 165 Ill. App. 3d 793, 797 (1987).

¶ 37    There are exceptions to the mootness doctrine, however, including where collateral consequences of a court's order "could return to plague the [defendant] in some future proceedings or could affect other aspects of [the defendant's] life." (Internal quotation marks omitted.) *People v. Holt*, 2013 IL App (2d) 120476, ¶ 4. Where such consequences "are likely to be redressed by a favorable judicial determination," then "appellate review is permissible." *In re Rita P.*, 2014 IL 115798, ¶ 31. This exception may prevent an appeal from an eviction order from being moot. See *Chicago Housing Authority v. Santiago*, 2024 IL App (1st) 221252-U, ¶ 28 (noting that an eviction order would render the defendant in that case ineligible for public housing).

¶ 38    Here, although Ms. MacDonald confirms in her own affidavit that she has vacated the unit, she argues her appeal is not moot because she "will face significant challenges with future landlords" if the eviction judgment is not reversed. She also asserts that Mr. Tsatsanis has used or plans to use the fact of the judgment in this case to seek holdover rent or liquidated damages in a separate action. We may take judicial notice of the fact that Mr. Tsatsanis is indeed pursuing a separate action against Ms. MacDonald for, among other things, holdover rent under a provision of the parties' lease providing liquidated damages for each day that the tenant wrongfully holds over. *Tsatsanis v. MacDonald*, No. 20231117485 (Jan. 16, 2024). Under these circumstances, we reject Mr. Tsatsanis's contention that this appeal should be dismissed as moot.

¶ 39                          B. The Absence of a Posttrial Motion

¶ 40    We next consider whether Ms. MacDonald's failure to file a posttrial motion should affect her ability to bring this appeal, an issue raised by the concurring justice. Section 2-1202 of the Code of Civil Procedure (Code) provides that "[r]elief desired after trial in jury cases *** must be sought in a single post-trial motion" filed within 30 days of the judgment. 735 ILCS 2-1202(b), (c) (West 2022). Illinois Supreme Court Rule 366(b)(2)(iii) (eff. Feb. 1, 1994), similarly provides that "[a] party may not urge as error on review of the ruling on the party's post-trial motion any point, ground, or relief not specified in the motion." The failure to file a posttrial motion can impact our review of both the outcome at trial and the circuit court's ruling on pretrial motions. See, *e.g.*, *Tamalunis v. City of Georgetown*, 185 Ill. App. 3d 173, 182 (1989) (concluding, under Rule 366(b)(2)(iii), that an appeal from a grant of summary judgment made before trial was not preserved where it was not included in the appellant's posttrial motion).

¶ 41    The record on appeal does not include a posttrial motion or refer to one having been made in this case, and our review of the circuit court's online docket confirms that no such motion was

made. The concurring justice believes we should find all issues forfeited and go no further in our consideration of the merits of this appeal. This is certainly an argument that Mr. Tsatsanis had every right to make in his brief on appeal. He did not. He instead moved to dismiss this appeal on a different basis, and, should he not succeed in that approach, chose to address the merits of Ms. MacDonald's arguments. Mr. Tsatsanis has thus forfeited any forfeiture argument he could have made by failing to argue it on appeal. *People v. De La Paz*, 204 Ill. 2d 426, 433 (2003).

¶ 42    The concurring justice agrees that an appellant's failure to file a posttrial motion does not implicate this court's jurisdiction, something we have an independent duty to consider. See *Wartalski v. JSB Construction and Consulting Co.*, 384 Ill. App. 3d 139, 144 (2008) (noting that section 2-1202 does not "establish or limit the appellate court's jurisdiction"). He also acknowledges that we have the discretion to reach arguments not made in a posttrial motion. See *Rutledge v. St. Anne's Hospital*, 230 Ill. App. 3d 786, 789-90 (discussing this court's power, under Rule 366, to reach issues not included in a posttrial motion). He suggests, however, that the concept of "forfeiture of forfeiture" is one that only, or at least primarily, applies in criminal cases. But as our supreme court has made clear, " '[i]n our adversary system, *in both civil and criminal cases*, in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters *the parties present*.' " (Emphasis added.) *People v. Givens*, 237 Ill. 2d 311, 323-24 (2010) (quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008)). Here, both parties are represented by counsel and have made cogent arguments on appeal. There is no reason why Mr. Tsatsanis's forfeiture should be overlooked and Ms. MacDonald's should not. Nor is there any reason for this court to advance an issue that Mr. Tsatsanis could have, but did not, make on appeal

¶ 43    In sum, the issues Ms. MacDonald raises on appeal have been fully briefed by the parties,

with no discussion of whether a posttrial motion was filed, and we see no reason not to address them. We turn to those issues now.

¶ 44                    C. Ms. MacDonald's Arguments on Appeal

¶ 45    Ms. MacDonald argues the judgment of the trial court in Mr. Tsatsanis's favor should be reversed because (1) one or both of her motions to dismiss the action should have been granted, (2) her motion to deem facts admitted was improperly denied, (3) Mr. Tsatsanis's motion *in limine* to exclude any mention of Eleni at trial should not have been granted, and (4) various other errors prevented her from receiving a fair trial.

¶ 46                    1. Ms. MacDonald's Motions to Dismiss the Eviction Action

¶ 47    Ms. MacDonald initially moved to dismiss the complaint in this matter, on the bases that Mr. Tsatsanis had not properly served her with a 60-day termination notice or had waived the notice by accepting rent after the expiration of the lease. In an emergency motion to reconsider the trial court's denial of that motion—which the court treated as a second motion to dismiss—she further argued that she was given written consent to remain on the property by Mr. Tsatsanis's wife and co-owner of the property, Eleni Tsatsanis.

¶ 48    Although Ms. MacDonald did not clearly indicate what section of the Code each of her arguments for dismissal was brought under, the trial court treated them as having been brought under section 2-619 (735 ILCS 5/2-619 (West 2022)). A motion made pursuant to that section admits the sufficiency of the complaint but asserts an affirmative matter that defeats the claim. *Bjork v. O'Meara*, 2013 IL 114044, ¶ 21. The court accepts as true "all well-pleaded fact, as well as all reasonable inferences that may arise therefrom," and will "interpret all pleadings and supporting documents in favor of the nonmoving party." *Id.*

¶ 49    Our review of a section 2-619 dismissal is *de novo*. *Patrick Engineering, Inc. v. City of*

13

*Naperville*, 2012 IL 113148, ¶ 31. Here, however, the court did not grant but *denied* Ms. MacDonald's motions to dismiss. The denial of a section 2-619 motion to dismiss, like the denial of a motion for summary judgment, is not generally reviewable on appeal. *Ovnik v. Podolskey*, 2017 IL App (1st) 162987, ¶¶ 19-20. This is because "any error in the denial of the motion merges into the final judgment"—in this case the jury's verdict in favor of Mr. Tsatsanis—"and it is from that final judgment that an appeal is taken." *Id.* ¶ 19. An exception to the merger doctrine exists, however, where the motion raised a question of law that was never put to the jury. *Young v. Alden Gardens of Waterford, LLC*, 2015 IL App (1st) 131887, ¶¶ 42-43. The trial court here decided two such questions when it denied Ms. MacDonald's motions. Thus, we have jurisdiction to review these determinations. Considering each in turn, however, we find no error in the court's rulings.

¶ 50    The trial court was correct that a tenant's actual receipt of a 60-day termination notice will cure the landlord's failure to serve the notice in strict accordance with the Act. The Act provides that notice "may be made" by hand delivery; by certified or registered mail, with a returned receipt from the addressee; or, if no one is in actual possession of the property, by posting a notice on the premises. 735 ILCS 5/9-211 (West 2022). As we noted in *Prairie Management Corp. v. Bell*, 289 Ill. App. 3d 746, 752 (1997), "the methods of service suggested in the [Act] are not meant to be exhaustive." The notice in that case informed the tenant that her lease would be terminated due to her material noncompliance with the parties' lease agreement. *Id.* at 749. The landlord placed it under the tenant's door and sent it to her by first-class mail but failed to obtain a return receipt as specified in the Act. *Id.* at 748-49. The tenant acknowledged her receipt of the notice, however, when she went to the landlord's property management office to discuss the allegations contained in it. *Id.* at 750. Where she had "expressly admitted actual receipt of the notice," we reasoned, she could not later claim that her landlord's failure to strictly comply with the statutory service

requirements was fatal to his case. *Id.* at 752. Because "the 'object of notice is to inform the party notified,' " we explained, " 'if the information is obtained in any way other than formal notice, the object of notice is attained.' " *Id.* (quoting *Vole, Inc. v. Georgacopoulos*, 181 Ill. App. 3d 1012, 1019 (1989)). Here, where Ms. MacDonald plainly acknowledged her receipt of the 60-day termination notice by email, the court did not err by rejecting her argument that a failure to strictly comply with the statutory service requirements should result in the dismissal of Mr. Tsatsanis's case.

¶ 51    Although Ms. MacDonald acknowledges in her opening brief in this appeal that her first motion to dismiss was filed "pursuant to 735 ILCS 5/2-619," in her reply brief she argues the trial court "failed to consider the 2-615 basis under which" that motion should have been granted. Ms. McDonald argues that the case should have been dismissed under 2-615 because Mr. Tsatsanis never *alleged* that he received a certified mail return receipt for the 60-day termination notice. It is not at all clear that this argument was part of Ms. McDonald's motion to dismiss but, if it was, such a motion would also have failed. As noted above, if the evidence showed that Ms. MacDonald actually received the notice more than 60 days before Mr. Tsatsanis sought to evict her, this was a sufficient basis for eviction.

¶ 52    Ms. MacDonald argues in the alternative that the trial court should have granted her first motion to dismiss because Mr. Tsatsanis waived his right to terminate her tenancy by accepting rent after the termination date provided in the notice letter. She asserts, "upon information and belief," that he received her payment for September 2022's rent on August 31, 2022, the termination date stated in the notice. This is not the argument Ms. MacDonald made in the trial court. She argued there that Mr. Tsatsanis accepted rent from her *after the expiration of her lease* on May 31, 2022.  Acceptance of rent after the expiration of the lease is irrelevant. The only way

that Mr. Tsatsanis could have waived his right to rely on the termination notice is if he accepted rent for occupancy that occurred after the date listed in that notice. *Bismark Hotel Co. v. Sutherland*, 92 Ill. App. 3d 167, 173 (1980).

¶ 53    Apparently realizing this, Ms. MacDonald now argues, for the first time on appeal, that Mr. Tsatsanis accepted rent from her on August 31, 2022, that was for the month of September. This argument is not properly before us, as Ms. McDonald never made it in the trial court, either by way of one of her motions to dismiss or by presenting it as a defense to the jury. See *Helping Others Maintain Environmental Standards v.* Bos, 406 Ill. App. 3d 669, 695 (2010) (noting that "a party who does not raise an issue in the trial court forfeits the issue and may not raise it for the first time on appeal"). While she did finally cite the *Bismark* case in her reply in support of her motion to dismiss, she still never explicitly argued or presented evidence demonstrating that Mr. Tasatsanis accepted rent for September or later.

¶ 54    Forfeiture is particularly appropriate here because Ms. McDonald's failure to raise this argument below leaves us with no factual record on which to determine the merits of this contention.  The only evidence as to when the last rental payment was accepted are records of Zelle payments, the last one of which is clearly for the month of August. Ms. McDonald now points to Mr. Tsatsanis's affidavit, in which he averred that he "accepted no rental payments after August 31, 2022." Ms. McDonald surmises this means that he accepted rent from her *on* August 31 that was for the month of September. Mr. Tsatsanis insists the affidavit supports his position that there was no acceptance of rent for any period after August 31, 2022.  If Ms. McDonald wanted a factual finding to the contrary, she needed to seek one in the circuit court. Her failure to do so means this argument is not properly before us.

¶ 55    With respect to Ms. MacDonald's second motion to dismiss, the trial court was correct that

it did not matter whether Eleni agreed to let Ms. MacDonald stay on as a month-to-month tenant because the unanimous consent of both property owners is not required to terminate a lease. In *Daugherty v. Burns*, 331 Ill. App. 3d 562, 568 (2002), we reasoned that "the recognized principle that consent of all joint owners is necessary to create a lease" does not mean that the opposite is true. We held that a joint owner may terminate a lease once unanimous consent to continue the tenancy no longer exists. *Id.* at 570. We have since reaffirmed that reasoning. See *Schroeder v. Post*, 2019 IL App (3d) 180040, ¶¶ 14-15 (following *Daugherty* and affirming an award of holdover rent where a joint owner terminated the lease by giving written notice).

¶ 56    Ms. MacDonald insists that the trial court here misapplied the holdings in these cases. She points out that the objecting joint owners in *Daugherty* were mere minority interest-holders and the plaintiff in that case had filed an action for partition and declaratory judgment. She likewise tries to distinguish *Schroeder* on the basis that, unlike her, the plaintiff in that case never enjoyed 100% ownership of the property in question. Nothing suggests, however, that the courts in those cases relied on those facts as a basis for their clear holding that the unanimous consent of all owners is unnecessary to terminate a tenancy. Equally unavailing is Ms. MacDonald's parroting of the *Daugherty* court's observation—in 2002—that there were no Illinois cases directly addressing the question. Now, of course, there are.

¶ 57    We also find Ms. MacDonald's reliance on *Wood v. Wood*, 284 Ill. App. 3d 718 (1996), to be misplaced. The plaintiffs there tried to evict their former daughter-in-law, after their son deeded the home he had shared with her to them. *Id.* at 721. The court concluded that an eviction would violate a protective order entered in divorce proceedings granting the daughter-in-law sole possession of the house. *Id.* at 725. Ms. MacDonald makes no real effort to explain the relevance of the case here, beyond her observation that both it and this case "involve facts of a transfer of

deed to the property, a dissolution of marriage, and a forcible entry and detainer proceeding." Nor can we ourselves discern how the case might be relevant. An order of protection was entered in Mr. Tsatsanis and Eleni's divorce proceedings providing that Mr. Tsatsanis shall not "take, transfer, encumber, conceal, or otherwise dispose of any real or personal property," but evicting a holdover tenant falls into none of those categories.

¶ 58    The trial court did not err in denying Ms. MacDonald's motions to dismiss.

¶ 59                    2. Ms. MacDonald's Motion to Deem Facts Admitted

¶ 60    Ms. MacDonald next argues that it was reversible error for the trial court to deny her motion to deem facts admitted. She insists that Mr. Tsatsanis's failure to answer or object to her requests to admit within 28 days, as required by Illinois Supreme Court Rule 216 (eff. July 1, 2014), should have resulted in an incontrovertible judicial admission withdrawing those facts from contention. The rule provides that if a response is not made within 28 days of service, "[e]ach of the matters of fact and the genuineness of each document of which admission is requested is admitted." Ill. S. Ct. R. 216(c) (eff. July 1, 2014). Mr. Tsatsanis argued in response to the motion that he had no obligation to respond to the requests to admit because Ms. MacDonald failed to strictly comply with Rule 216's requirement that requests to admit and requests for production be served separately and that she failed to follow the specific wording of a required warning concerning the effect of not responding to them within the allotted time. In an apparent compromise, the trial court denied Ms. MacDonald's motion to deem facts admitted but ordered Mr. Tsatsanis to respond to her requests within one week, which he did.

¶ 61    While the court's approach to this discovery dispute seems clearly appropriate, even if it were not, it makes no difference to the outcome of this case. The court's denial of the motion to deem facts admitted had no impact on the resolution of this dispute. One of the 11 requests was

properly stricken by the court because it sought a legal conclusion concerning the jurisdiction of the divorce court. The other ten were admitted by Mr. Tsatsanis. Ms.McDonald's argument is that two of those admissions, set out below, were accompanied by objections regarding relevancy:

"3. Admit that on or about the year 2012 Eleni Tsatsanis, formerly known as, and also known as, Eleni Manokas acquired the Premises as the sole owner by special warranty deed.

Answer: Plaintiff objects to Request No. 3 as it is irrelevant and attempts to mischaracterize the facts. Notwithstanding, Admitted, however Plaintiff was deeded the Property as Tenants by the Entirety with Eleni Tsatsanis on January 22, 2021.

* * *

8. Admit that Demosthenis Tsatsanis has not received express permission or order of court in the divorce proceedings to proceed with the eviction of Defendant Renee MacDonald.

Answer: Plaintiff objects to Request No. 8 as it is irrelevant to the claims in this lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff also objects as it is ambiguous as to whether 'express permission' relates to the Court where the divorce proceedings are held or some other party. Notwithstanding, admitted insofar as no order of the court exists."

¶ 62 Having secured the admissions she believes the rule entitles her to, Ms. MacDonald's argument appears to be that these late relevancy objections should not have been allowed, and Mr. Tsatsanis should thus have been barred from objecting to related matters at trial. She has offered absolutely no legal support for that notion, however, and, having considered her arguments at length, we cannot see how the trial court's denial of her motion to deem facts admitted affected

the outcome of this case in any way.

¶ 63                                3. Mr. Tsatsanis's Motion *In Limine*

¶ 64    Ms. MacDonald also argues the trial court erred when it granted Mr. Tsatsanis's motion *in limine* "barring any evidence or testimony by argument or inuendo related to Eleni Tsatsanis (Eleni) and her interest related to the outcome of this case, the pending divorce proceedings, or desired use of the subject property." The court concluded, given the narrow question presented in an eviction action, that such evidence was not relevant. "Evidence is relevant when it tends to prove a disputed fact or render the matter in issue more or less probable in light of logic, experience, and accepted assumptions of human behavior." *City of Rockford v. Elliott*, 308 Ill. App. 3d 735, 739 (1999). The "relevancy of evidence is largely within the discretion of the trial court, and reversal of its decision is not warranted absent abuse of that discretion." *O'Brien v. Hertl*, 238 Ill. App. 3d 217, 223 (1992).

¶ 65    Here, we have already affirmed the trial court's determinations both that Eleni's consent was not required for Mr. Tsatsanis to assert this eviction action against Ms. MacDonald and that her desire to allow Ms. MacDonald to remain in possession of the unit as a month-to-month tenant was irrelevant. The trial court correctly concluded that evidence supporting either proposition was not relevant to any question the jury would be called on to decide. Common sense dictates that where, as a matter of law, the jury is not at liberty to take a fact into account, evidence tending to prove that fact is irrelevant.

¶ 66    Ms. MacDonald nevertheless insists that it was unfair of the court to bar evidence relating to Eleni while allowing Mr. Tsatsanis to introduce into evidence the 60-day termination notice with both his and Eleni's signatures on it. She argues this resulted in "a substantially unfair trial because the jury improperly assumed Eleni Tsatsanis's signature on the 60 Day notice was valid,

and presumed [her] consent with the 60 Day Notice and eviction." But again, whether Eleni signed the document or consented to the eviction were simply not issues the jury needed to consider. The trial court did not abuse its discretion in barring this evidence.

¶ 67                                    4. Purported Errors at Trial

¶ 68    We similarly reject Ms. MacDonald's other assertions of reversible error at trial. She argues, for example, that the court erred by overruling her counsel's objection and admitting the 60-day termination notice into evidence without a proper foundation. "[T]he admissibility of evidence is a matter for the sound discretion of the trial court, and its decision will not be reversed on appeal unless that discretion has been clearly abused." *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 92 (1995). Ms. MacDonald points out that Eleni swore in her affidavit that she did not sign the 60-day notice letter and insists her counsel should thus have been allowed to cross-examine Mr. Tsatsanis regarding the authenticity of the electronic signatures. But the authenticity of Eleni's signature was, again, and for all of the reasons stated above, irrelevant to these proceedings.

¶ 69    The court did not abuse its discretion when it concluded that a sufficient foundation was laid through Mr. Tsatsanis's testimony for the letter to be admitted at trial. Illinois Rule of Evidence 901 provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Ill. R. Evid. 901(a) (eff. Sept. 17, 2019). Mr. Tsatsanis identified the letter, dated June 28, 2022, as "the letter that [he] sent to Renee." He further identified the electronic signature on the first page as his. This was sufficient to lay a foundation for the admission of the document into evidence.

¶ 70    Ms. MacDonald next argues the trial court incorrectly instructed the jury on the applicable

law. This is a question we review *de novo*. *In re James W.*, 2014 IL App (5th) 110495, ¶ 25. The court instructed the jury that they should find in favor of Mr. Tsatsanis if they concluded that Ms. MacDonald received the 60-day termination notice in one of two ways: by certified mail on June 30, 2022, or by email on July 27, 2022. Ms. MacDonald argues that this was a misstatement of the law because section 9-211 of the Act provides for service only by hand delivery or certified mail with a return receipt. As noted above, however, the methods of service suggested in the statute are not exhaustive, and actual notice will cure any defect in service. *Prairie Management*, 289 Ill. App. 3d at 750, 752. Here, the testimony at trial suggested two ways in which Ms. MacDonald may have received the 60-day notice letter more than 60 days before she was named in this action. Either she first received it by certified mail on June 30, 2022, as suggested by the tracking information on the USPS website and the fact that no one besides her resided in the unit who could have accepted service, or—as her own testimony at trial made perfectly clear—she received it by email on July 27, 2022. The jury was properly instructed.

¶ 71    Finally, Ms. MacDonald argues she did not receive a fair trial because Mr. Tsatsanis's counsel and the court "browbeat, objected, and overtalked" her counsel, preventing him from making an effective closing statement. "Questions as to the prejudicial effect of remarks made during opening statement and closing argument are within the discretion of the trial court." *Simmons v. Garces*, 198 Ill. 2d 541, 568 (2002). We have reviewed the transcript of the entire trial, including closing argument, and find no abuse of discretion here. Counsel clearly struggled to make an effective closing argument, but that was because the court's rulings on the applicable law—which we conclude were correct—left him with little to argue in support of his client's right to possession of the property. It is proper for the trial court to limit parties' closing arguments to those questions at issue which will be submitted to the jury. *Vincent v. Wesolowski*, 87 Ill. App.

2d 477, 486 (1967). The court here properly sustained objections to counsel quoting from the RLTO, when no instruction had been tendered on the quoted provision; to him misstating the law; and to him commenting to the jury on his personal beliefs regarding the authenticity and admissibility of evidence.

¶ 72                                    IV. CONCLUSION

¶ 73    For all of the above reasons, we affirm the judgment of the trial court.

¶ 74    Affirmed.


¶ 75    PRESIDING JUSTICE MITCHELL, specially concurring:

¶ 76    I concur in the judgment affirming the circuit court, but I cannot join the majority's decision, which threatens to upend settled rules of civil and appellate procedure. It is axiomatic that in order to preserve issues for appellate review in a civil case after a jury trial, the appealing party must have raised the contention of error in a posttrial motion. *See* 735 ILCS 5/2-1202; Ill. R. of Evid. 103(b)(4) (eff. Oct. 15, 2015). Our appellant filed no posttrial motion following her jury trial, and as a consequence, she forfeited appellate review. Ill. S. Ct. R. 366(b)(2)(iii); see also *Arient v. Shaik*, 2015 IL App (1st) 133969, ¶ 34 ("courts have consistently held for decades that the failure to file a posttrial motion in a jury case results in forfeiture") (collecting cases). Q.E.D.: case closed.

¶ 77    To be sure, the doctrines of waiver and forfeiture are prudential. A reviewing court as a "matter of grace" may consider an unpreserved error, but only in the most exceptional circumstances "involving deprivation of life or liberty" or an egregious error compromising a party's right to "a fair and impartial trial." *People v. De La Paz*, 204 Ill. 2d 426, 432 (2003) (quoting *People v. Burson*, 11 Ill. 2d 360, 370-71 (1957)). Civil cases in which our court has set

aside a forfeiture are precious few, and it has never before been done on a whim. We have only done so where it is necessary to achieve a "just result" such as where an appellant was "denied a fair trial." *Rutledge v. St. Anne's Hospital*, 230 Ill. App. 3d 786, 789, 790 (1992).

¶ 78    The fact that the majority has chosen to set aside a forfeiture here is particularly curious because there is no question that the defendant received a fair trial. The notion of a "forfeiture of forfeiture" or "waiver of waiver" has been confined almost exclusively to criminal cases. There is no support in our law for the notion that we should just throw out the rule book where parties (collusively or carelessly) fail to abide by basic procedural requirements.

¶ 79    The regrettable consequence of the majority's decision is to undermine a bedrock rule of procedure as understood by practitioners. See Elizabeth M. Bosek, *et al.*, 2 Ill. L. and Prac. *Appeal and Error* § 198 ("After a jury trial, a party may not raise on appeal any purported errors except those raised in its post-trial motion."); Timothy J. Storm, 1 Ill. Appellate Prac. Manual § 5:3 ("[N]o error is preserved for review if no post-trial motion is filed in a jury case."); Mary Ellen West, 3A Nichols Ill. Civ. Prac. § 64:4 ("[W]here a motion is not filed, the reviewing court is legally unable to decide any substantive issues raised on appeal."); Mary Patricia Benz, *Motions After Judgment in Illinois and Federal Jury Trial Practice*, 23 C.B.A. Record 30 (2009) ("Even legal issues that were not tried to the jury, such as, e.g., issues raised in unsuccessful summary judgment motions, must be included in the post-trial motion to avoid waiver."); Hon. Robert W. Cook, *An Appellate Justice's Quick Guide to Appeals*, 97 Ill. B. J. 132, 133 (2009) ("File a post-trial motion whenever you intend to take an appeal."); Ruth F. Masters, *(Why) I Object!*, 107 Ill. B. J. 28, 30 (2019) ("To preserve an issue for review from a jury trial, a party must file a posttrial motion raising the issue."); Don R. Sampen & Mark J. Sobczak, *A Guide to Illinois Postjudgment Motions*, 105 Ill. B. J. 52 (2017) ("A postjudgment motion is required to preserve issues for appeal following jury

trials"). This is bread-and-butter civil procedure intended to promote error avoidance—an important institutional value. I see no reason in this case to deviate from this rule.